

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Estado Libre Asociado de Puerto Rico, Departamento de Vivienda, Administración de Vivienda Pública P/C Mas Corporation<br><br>Recurridos<br><br>V.<br><br>Edwin Molina Figueroa<br><br>Peticionario | Certiorari<br><br>2012 TSPR 129<br><br>186 DPR ____ |

Número del Caso: AC-2009-8

Fecha: 21 de agosto de 2012

Tribunal de Apelaciones:

> Región Judicial de Bayamón, Panel VIII

Abogados de la Parte Peticionaria:

> Lcda. Lilliam Miranda Rodríguez
> Lcdo. Jorge Álvarez González

Oficina de la Procuradora General:

> Lcda. Irene Soroeta Kodesh
> Procuradora General
>
> Lcda. María C. Umpierre Marchand
> Procuradora General Auxiliar

Materia: Sentencia y Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEPARTAMENTO DE VIVIENDA, ADMINISTRACIÓN DE VIVIENDA PÚBLICA P/C MAS CORPORATION<br><br>Recurridos<br><br>v.<br><br>EDWIN MOLINA FIGUEROA<br><br>Peticionario | Núm.: <u>**AC-2009-0008**</u> | Apelación |

SENTENCIA

En San Juan, Puerto Rico, a 21 de agosto de 2012.

En el día de hoy nos enfrentamos a los reclamos de un litigante que alega tener un interés propietario sobre una vivienda pública donde ha residido toda su vida, suficiente como para evitar el proceso de desahucio instado en su contra por la Administración de Vivienda Pública (A.V.P. o parte recurrida). Igualmente, aduce el Sr. Edwin Molina Figueroa (señor Molina o el peticionario) que no podía ser desplazado de dicha vivienda a base de la política pública que promueve un ambiente digno para las personas con impedimentos debido a su condición de no vidente.

I

Durante los últimos cincuenta y tres (53) años de su vida, la señora Petra Figueroa Olivo (señora Figueroa) ocupó, mediante arrendamiento, el Apartamento Núm. 2 del

Edificio Núm. 19 del Residencial Enrique Catoni en Vega Baja (Apartamento) propiedad de la A.V.P. Igualmente, desde su nacimiento hace más de cincuenta (50) años, el peticionario, a su vez hijo de la señora Figueroa, ha vivido en dicho Residencial.

En lo concerniente a este recurso, el 11 de junio de 2002 la señora Figueroa renovó su Contrato de Arrendamiento con la A.V.P. y designó al señor Molina como el otro miembro de la composición familiar autorizado a residir en la propiedad junto a ella.

Siguiendo el protocolo establecido en la reglamentación de la A.V.P., la señora Figueroa suscribió Complementos al Contrato de Arrendamiento anualmente. En los Complementos correspondientes a los años 2002, 2003 y 2004 no se registró cambio alguno en lo concerniente a los integrantes de la composición familiar autorizados a residir en el Apartamento.[1]

En el año 2005 el señor Molina fue encontrado culpable por un delito grave bajo la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2101 *et seq.* (2011), por lo cual se le condenó a cumplir seis (6) años de prisión, ingresando a la cárcel el 19 de abril de 2005.

El 20 de mayo de 2005, mientras su hijo se encontraba en la cárcel, la señora Figueroa suscribió un Complemento al Contrato de Arrendamiento con la A.V.P. donde surgió

---

[1] Los Complementos al Contrato se efectúan como parte de la revisión anual de los arrendatarios. Estos reflejan cambios pertinentes al Contrato de Arrendamiento, tales como ajustes a la renta y a la composición del grupo familiar.

como integrante exclusiva de la composición familiar con derecho a residir en el Apartamento.

Por su parte, el 27 de abril de 2006, el señor Molina suscribió un acuerdo con la Oficina de Programa de Desvío y Comunitarios, entidad adscrita al Departamento de Corrección y Rehabilitación, mediante el cual se le permitió participar en el Programa de Pase Extendido por Condición de Salud (Programa) debido a su ceguera. Véase 4 L.P.R.A sec. 1112(e) (2010). Bajo los términos de dicho Programa, el señor Molina quedaría en la libre comunidad, aunque continuaría formando parte de la matrícula del Centro de Detención de Bayamón. Sentencia del Tribunal de Apelaciones, recurso Núm. KLRA200800547. A base de ello, a principios de mayo de 2006, el señor Molina regresó a residir con su madre en el Apartamento en cuestión.

Así las cosas, el 29 de junio de 2006 la señora Figueroa suscribió otro Complemento al Contrato de Arrendamiento donde, al igual que en el año 2005, se mantuvo designada como único miembro de la composición familiar con derecho a ocupar el Apartamento, a pesar de que para entonces convivía con el peticionario.

El 23 de mayo de 2007, por exigencia de la A.V.P., la señora Figueroa otorgó un nuevo Contrato de Arrendamiento.[2] Habida cuenta de que la arrendataria se encontraba encamada e imposibilitada de firmar, se estamparon sus

---

[2] Debido a cambios en la reglamentación de la A.V.P. se requirió, en ese año en particular, que todos los residentes del Residencial firmaran un nuevo contrato.

huellas digitales en el documento y compareció como testigo del otorgamiento del documento la Sra. Elba Matos, vecina del Residencial. Además, durante el otorgamiento estuvo presente una trabajadora social.

Dos (2) días más tarde, el 25 de mayo de 2007 otro hijo de la señora Figueroa, el Sr. Luis Martínez Figueroa (señor Martínez), hermano del aquí peticionario, suscribió un formulario de la A.V.P. titulado Hoja de Tutor donde asumió la responsabilidad de representar a su madre en asuntos relacionados ante dicha agencia. En esa misma fecha, se otorgó un Complemento al nuevo Contrato de Arrendamiento, en el cual una vez más se registró a la señora Figueroa como la única residente del Apartamento. Nuevamente se imprimieron las huellas digitales de la señora Figueroa en el documento, mientras que el señor Martínez, en calidad de tutor, lo suscribió.

En algún momento, el peticionario y el señor Martínez, hicieron gestiones con la A.V.P. para incluir al señor Molina en el Contrato de Arrendamiento de su madre. Durante ese proceso la Sra. Rosa Figueroa Alvarado, Administradora del Residencial Catoni, les orientó a los efectos de que, conforme a lo dispuesto en la reglamentación aplicable, tenían que transcurrir más de tres (3) años luego de extinguirse la sentencia correspondiente para que un convicto pueda ser elegible para vivienda pública. No obstante, dicho proceso de solicitud no se completó ya que el señor Molina nunca

sometió su Certificado de Antecedentes Penales, requisito indispensable para el trámite.

Pasados unos meses, el 26 de agosto de 2007 la señora Figueroa falleció, pero el señor Molina se mantuvo residiendo en el Apartamento.

La A.V.P. intentó que el peticionario desalojara la propiedad por entender que éste no tenía contrato que le otorgara derecho a continuar ocupando la misma. Sus gestiones resultaron infructuosas, por lo que el 4 de octubre de 2007, el Gobierno de Puerto Rico, el Departamento de la Vivienda y la A.V.P., por conducto de MAS Corporation, entidad encargada de la administración del Residencial Catoni, presentaron una Demanda de desahucio en precario ante el Tribunal de Primera Instancia, Sala de Bayamón, conforme al procedimiento provisto en los Artículos 620 y siguientes del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. secs. 2821 *et seq.* (2004 y Supl. 2011).

Con el propósito de impedir su desalojo del Apartamento, el 16 de octubre de 2007, precisamente un día antes de ser emplazado, el señor Molina solicitó la intervención del Tribunal de Primera Instancia, Sala de Vega Baja, al amparo de la Ley Núm. 140 de 23 de julio de 1974, conocida como Ley sobre Controversias y Estados Provisionales de Derecho, 32 L.P.R.A. sec. 2871 *et seq.* (2004) (Ley 140).

El 24 de octubre de 2007 dicho foro emitió una *Resolución Fijando un Estado Provisional de Derecho* donde le ordenó a la A.V.P., a través de MAS Corporation, a mantener al señor Molina en el Apartamento, o en otro apartamento del mismo Residencial, mientras su capacidad de permanecer residiendo allí se ventilase en el curso ordinario de la ley. A esos efectos dictaminó lo siguiente:

> La política pública de la Administración de Corrección y el Gobierno es la rehabilitación de la persona que le haya fallado a la sociedad. Además de darle apoyo a las personas con impedimento físico para que puedan tener una vida digna y productiva. No podemos abstraernos de ello y desecharlo a su suerte.

Mientras tanto, el procedimiento de desahucio continuó su curso en el Tribunal de Primera Instancia, Sala de Bayamón. El 19 de diciembre de 2007 se celebró una vista evidenciaria a la que comparecieron, en representación de la parte recurrida, la Sra. Rosa Figueroa Alvarado, Administradora del Residencial Catoni, y la Sra. Mayda Liz Irizarry Villegas, funcionaria encargada de la determinación de elegibilidad para admisión de vivienda. De la otra parte, compareció el peticionario junto al señor Martínez.

Conforme surge de la transcripción correspondiente, a pesar de que el tribunal le concedió un término al señor Molina para acudir a la A.V.P. y tramitar una solicitud de vivienda a su nombre, y no como continuación del contrato de su madre, el peticionario nunca completó dicho proceso

en el tiempo asignado, por lo que la vista de desahucio se llevó a cabo según programada.

El peticionario levantó múltiples defensas al proceso de desahucio. Mediante su testimonio y el de su hermano, el peticionario intentó establecer que su madre, la señora Figueroa, sufría de demencia senil, condición que le imposibilitaba dar un consentimiento válido, razón por la que el último Contrato de Arrendamiento otorgado entre ésta y la A.V.P. en mayo de 2007 era nulo. Argumentó que por dicho motivo continuaba en vigor el Contrato de Arrendamiento de junio 2002 donde él sí aparecía designado como parte de la composición familiar, lo cual le confería un derecho propietario sobre el Apartamento. Igualmente planteó que, conforme la reglamentación aplicable, la A.V.P. venía obligada a notificar por escrito su denegatoria a la solicitud de vivienda como parte del Contrato de Arrendamiento de la señora Figueroa. Por consiguiente, al así no hacerlo se le violó su derecho al debido proceso de ley.

Adujo que el procedimiento sumario de desahucio constituía un mecanismo inapropiado para impugnar la *Resolución Fijando un Estado Provisional de Derecho* emitido por el Tribunal de Primera Instancia, Sala de Vega Baja, respecto a lo allí decretado en lo atinente a un acomodo razonable conforme la Americans with Disabilities Act, 42 U.S.C. secs. 12101 *et seq.* (ADA) y su derecho a la rehabilitación.

Oportunamente el Tribunal de Primera Instancia, Sala de Bayamón, emitió una Sentencia el 17 de enero de 2008 en la que declaró *Ha Lugar* la Demanda de desahucio e impuso al señor Molina el pago de quinientos dólares ($500.00) por concepto de temeridad. No aceptó, por tanto, las imputaciones de nulidad del Contrato de Arrendamiento del año 2007, ni las otras defensas al proceso levantadas por el peticionario. Manteniéndose firme en su determinación, el 8 de febrero de 2008 ese mismo foro denegó la solicitud de determinaciones de hechos adicionales instada por el señor Molina.

El 8 de abril de 2008 el señor Molina acudió al Tribunal de Apelaciones para impugnar la Sentencia de desahucio objeto de este recurso e imputó la comisión de ocho (8) errores.[3] Entre ellos, adujo nuevamente la nulidad del Contrato de Arrendamiento de mayo 2007 por la alegada incapacidad de su madre para prestar consentimiento debido a su demencia senil desde el año 2005. Por ello, según el peticionario, aun formaba parte

---

[3] Cabe señalar que el 12 de febrero de 2008, previo a recurrir al Tribunal de Apelaciones, el peticionario sometió una solicitud formal de vivienda bajo su nombre para la consideración de la A.V.P. con el propósito de legalizar su ocupación del Apartamento. Sin embargo, en esa misma fecha le fue notificado que resultaba inelegible para residir en el Residencial a causa de su récord criminal. Este trámite administrativo estuvo sujeto a revisión judicial en dos (2) ocasiones diferentes a través de los recursos KLRA200800572 y KLRA200900346. En ambos, mediante Sentencias de 22 de agosto de 2008 y 9 de junio de 2009, respectivamente, el Tribunal de Apelaciones revocó las correspondientes denegatorias de vivienda emitidas por la A.V.P. a base de faltas procesales, y devolvió el caso a la agencia para ser corregidas.

Habida cuenta de que la solicitud formal de vivienda a su nombre fue posterior a la Sentencia que concedió el desahucio, este trámite nunca estuvo ante la consideración del tribunal de instancia. Tampoco consta en autos la determinación final de la A.V.P. atinente a la solicitud del peticionario, por lo que no hay razón para considerar en el presente recurso dichos procesos paralelos.

del contrato de arrendamiento lo que justificaba su ocupación del inmueble. Alegó que ello suscitó un conflicto de título que no podía ser resuelto en un procedimiento sumario de desahucio. Igualmente, reclamó poseer un interés propietario sobre el Apartamento a base de lo decretado en la *Resolución Fijando un Estado Provisional de Derecho*. Invocó su derecho a un acomodo razonable conforme provisto en la ADA, así como su derecho a la rehabilitación y vivienda fijado en el Artículo 4 de la Carta de Derecho de las Personas con Impedimentos, Ley Núm. 238-2004, 1 L.P.R.A. sec. 512a(c) (2008). Planteó, además, violaciones a su derecho al debido proceso de ley. Primeramente, al no notificársele por escrito la determinación de la A.V.P. respecto a su intento de solicitar vivienda continuada en el Apartamento. Segundo, por excluírsele del Apartamento por haber sido convicto de delito sin cumplir con los procedimientos establecidos en el *Reglamento para la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos*, Reglamento Núm. 6391 de la Administración de Vivienda Pública, 31 de enero de 2002 (Reglamento 6391). Por último, refutó la determinación de temeridad.

El 18 de diciembre de 2008 el foro apelativo intermedio emitió una Sentencia en la que confirmó el fallo de desahucio emitido por el tribunal de instancia. Decretó que el señor Molina quedaba descalificado para residir en el Apartamento por su récord criminal en virtud

de lo dispuesto en el Reglamento 6391 y tampoco cualificaba para vivienda continua por no formar parte del núcleo familiar conforme el Complemento de Contrato vigente al morir la señora Figueroa. En cuanto al argumento de debido proceso de ley basado en la alegada falta de notificación de la denegatoria a la solicitud para ser incluido en el contrato de su madre, notó que el peticionario no había completado el proceso de solicitud correspondiente. Concluyó, además, que la señora Figueroa no padecía de demencia senil cuando suscribió el Contrato de Arrendamiento más reciente en el año 2007. También confirmó la temeridad del señor Molina.

Es de esa Sentencia que el señor Molina recurrió ante este Tribunal, en apelación, consignando los siguientes seis errores:

1. *Erró el Honorable Tribunal de Apelaciones al declarar que procede el desahucio en precario de manera sumaria, sin haber tomado en cuenta lo resuelto en el Estado Provisional de Derecho, y resolver que el Sr. Edwin Molina Figueroa no forma parte de un contrato de arrendamiento que justifica la posesión del inmueble sito en el Residencial Catoni.*

2. *Erró el Honorable Tribunal de Apelaciones al determinar que procede el desahucio en precario del Sr. [Molina] Figueroa [] sin tomar en consideración que el apelante es un ciudadano con impedimento visual, en violación a la clara política pública de que toda persona con impedimento viva en un ambiente de tranquilidad[,] respeto y dignidad que satisfaga sus necesidades básicas de rehabilitación y vivienda.*

3. *Erró el Honorable Tribunal de Apelaciones al resolver que la notificación verbal hecha por la agencia, en la que le "informan" al Sr. Molina*

*Figueroa que no cualificaba para una nueva vivienda, se hizo conforme al debido proceso de ley según establecido en el Reglamento para la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos (Reglamento Núm. 6391 de 31 de enero de 2002).*

4. *Erró el Honorable Tribunal de Apelaciones al determinar que la exclusión del Sr. [Molina] Figueroa [] del contrato no viola el debido proceso de ley porque se hizo en cumplimiento con el Reglamento para la Cancelación de Contrato y/o Realizar Reexamen Especial y/o Transferir el Contrato a Remanentes de Familia por Actividad Criminal (Reglamento Núm. 6416 de 25 de marzo de 2002).*

5. *Erró el Honorable Tribunal de Apelaciones al resolver que la Ley Número 171 de 4 de diciembre de 2002 y el mencionado Reglamento 6391 disponen que una persona que haya incurrido en conducta criminal queda automáticamente descalificada para ser admitida o continuar como residente en un residencial público.*

6. *Erró el Honorable Tribunal de Apelaciones al resolver que el recurrente Sr. [Molina] Figueroa [] actuó con temeridad al reclamar la vindicación de sus derechos.*

Oportunamente acogimos el presente recurso como *certiorari* y el 15 de junio de 2009 expedimos el auto solicitado. Posteriormente, el 12 de mayo de 2010, luego de examinados los méritos de la *Moción en Auxilio de Jurisdicción* presentada por la parte peticionaria, declaramos con lugar la solicitud de paralización de la Orden de Lanzamiento de 29 de abril de 2010 dictada por el Tribunal de Primera Instancia, Sala de Bayamón.

Con el beneficio de la comparecencia de ambas partes y estando en posición para resolver, procedemos a así hacerlo.

## II

Aunque se plantean múltiples errores en el recurso, como cuestión fundamental debemos resolver si el señor Molina tiene, según alega, un derecho propietario sobre el Apartamento que pretende retener, suficiente como para activar las garantías del debido proceso de ley frente a la A.V.P. y, de este modo, crear un conflicto de título oponible al desahucio.

Previo a adentrarnos en los méritos de la controversia según esbozada por el peticionario, es menester repasar algunos apuntes sobre las garantías constitucionales salvaguardadas por el derecho al debido proceso de ley que permea nuestro ordenamiento. Este derecho fundamental, el cual tiene sus orígenes desde la época de la Carta Magna, está consagrado en la Sección 7 del Artículo II de nuestra Constitución, Const. P.R., L.P.R.A., Tomo 1 (2008). Domínguez Castro *et al*. v. E.L.A. I, 178 D.P.R. 1, 35 (2010); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 273 (1987). Tomando como modelo las Enmiendas V y XIV de la Constitución federal,[4] se establece que "[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley…".

---

[4] La Quinta Enmienda de la Constitución de los Estados Unidos, en lo que aquí nos concierne, reza: "Ninguna persona... será privad[a] de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley...". Enmda. V, Const. EE. UU., L.P.R.A, Tomo 1 (2008).

La Enmienda Catorce de dicha Constitución, por su parte, dispone: "[N]ingún estado privará a persona alguna de su vida, de su libertad o de su propiedad, sin el debido procedimiento de ley, ni negará a nadie, dentro de su jurisdicción, la igual protección de las leyes". Enmda. XIV, Const. EE. UU., *supra.*

Art. II, Sec. 7, Const. P.R., *supra*.  Domínguez Castro *et al*. v. E.L.A. I, *supra*, pág. 35; Rivera Santiago v. Srio. de Hacienda, *supra*, pág. 273.

Aunque de su denominación este derecho cardinal conlleva una connotación puramente procesal, es regla bien conocida que el debido proceso de ley se manifiesta en dos (2) dimensiones: la sustantiva y la procesal.  Domínguez Castro *et al*. v. E.L.A. I, *supra*, pág. 35.

> Bajo el debido proceso *sustantivo*, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Por otro lado, en el debido proceso de ley *procesal* se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo.

Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993) (énfasis en original y citas internas omitidas).

De ahí surge que, independientemente del proceso utilizado para la aplicación de esta doctrina, el debido proceso de ley puede menoscabarse ya sea por el contenido de una legislación o como consecuencia de una actuación gubernamental.  Rivera Rodríguez & Co. v. Lee Stowell, etc., *supra*; Domínguez Castro *et al*. v. E.L.A. I, *supra*, pág. 38; J.J. Álvarez González, Derecho Constitucional de

Puerto Rico y Relaciones Constitucionales con los Estados Unidos, Bogotá, Ed. Temis S. A., 2009, pág. 629.

El criterio rector reconocido por este Foro en lo atinente al derecho que aquí nos concierne, entiéndase el debido proceso de ley en su vertiente procesal, es que el procedimiento que lleve a cabo el Estado al afectar un interés propietario o la libertad de un individuo sea uno **justo e imparcial**. Hernández v. Secretario, 164 D.P.R. 390, 395 (2005). "El propósito de esta garantía elemental de nuestro ordenamiento jurídico es prevenir que el Estado abuse de sus poderes o que los ejerza de forma arbitraria, en perjuicio del individuo." San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640, 659 (2008).

Hemos decretado que el debido proceso de ley "no es un molde riguroso que se da en el abstracto", sino que está atado a los contextos en que éste se suscita, toda vez que "[c]ada caso exige una evaluación concienzuda de las circunstancias envueltas". P.A.C. v. E.L.A. I, 150 D.P.R. 359, 376 (2000). El debido proceso de ley es, en síntesis, "una de esas fórmulas elásticas de justicia sustancial que no es susceptible de definición genérica. No es una norma invariable que pueda aplicarse por su propia virtualidad independientemente de las circunstancias que median el caso." Domínguez Castro *et al.* v. E.L.A. I, *supra*, pág. 46 (citando Santiago v. Jones, 74 D.P.R. 617, 621-622 (1953)).

Sin embargo, antes de examinar si en efecto en este caso se concretó una violación al debido proceso en su modalidad procesal, es imperativo confirmar que dicha garantía es exigible, ya que no todo interés es merecedor de su protección. Board of Regents v. Roth, 408 U.S. 564, 570 (1972). "[C]uando analizamos un planteamiento de violación al debido proceso de ley en su vertiente procesal, debemos determinar, primeramente, si existe un derecho propietario o libertario que merezca la correspondiente protección constitucional." Calderón Otero v. C.F.S.E., 181 D.P.R. 386, 397 (2011). Para hacer tal determinación, es necesario evaluar la naturaleza del interés en precario, específicamente, si es uno que cae bajo la sombrilla de la Enmienda Catorce de la Constitución federal. Board of Regents v. Roth, *supra*, págs. 570-571; Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

En Board of Regents v. Roth, *supra*, el Tribunal Supremo federal reconoció el que un individuo puede gozar de cierto interés propietario sobre un *beneficio* adquirido.[5] No obstante, este concepto ciertamente tiene sus limitaciones, las cuales se han ido identificando jurisprudencialmente. Por ejemplo, una expectativa unilateral de recibir algún beneficio no se traduce

---

[5]      "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.  These interests–property interests–may take many forms." Board of Regents v. Roth, 408 U.S. 564, 576 (1972).

automáticamente en un interés propietario digno de la protección ofrecida bajo un debido proceso de ley.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. **He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it….**
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Board of Regents v. Roth, *supra*, pág. 577 (énfasis nuestro). Véase Morales Narváez v. Gobernador, 112 D.P.R. 761, 767 n.5 (1982) ("El concepto de interés propietario rechaza la expectativa unilateral.") (Énfasis suprimido).

Por consiguiente, las garantías constitucionales del debido proceso de ley no protegen cualquier concepto que pueda ser descrito o considerado como un mero beneficio. Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). Más bien, tiene que existir un derecho propietario legítimo y concreto para poder invocar el amparo de las salvaguardias que provee el derecho a un debido proceso de ley. Íd.; Perry v. Sindermann, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."); Board of Regents v. Roth, *supra*, pág. 577.

Ahora bien, una vez se determina que, en efecto, existe un derecho propietario afectado por el Estado, corresponde resolver qué proceso amerita las circunstancias particulares presentadas en un caso. Calderón Otero v. C.F.S.E., *supra*, pág. 398. "Once it is determined that due process applies, the question remains what process is due." Morrissey v. Brewer, *supra*, pág. 481. Véanse, además, Álamo Romero v. Adm. de Corrección, 175 D.P.R. 314, 329 (2009); P.A.C. v. E.L.A. I, *supra*, pág. 376; Rivera Santiago v. Srio. de Hacienda, *supra*, pág. 274.

A través de la jurisprudencia se han identificado los siguientes requisitos procesales como fundamentales para garantizar que se haya observado y cumplido con las salvaguardas impuestas por el debido proceso de ley: (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) una oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado; y (6) que la decisión se base en el contenido del expediente del caso. Calderón Otero v. C.F.S.E., *supra*, pág. 399; Hernández v. Secretario, *supra*, págs. 395-396.

Tomando estos preceptos como guía, procedemos a analizar si el señor Molina fue propiamente desahuciado del Apartamento por no gozar de un interés propietario o

si, por el contrario, el trámite utilizado por la A.V.P. para estos fines menoscabó sus derechos constitucionales.

## III

## Reglamento 6391

Se hizo formar parte integral de los mencionados Contratos de Arrendamiento, entre otros, el Reglamento 6391. Al encontrarse los contratos subordinados a dicho reglamento, es necesario estudiarlos para auscultar los términos y condiciones que gobiernan el arrendamiento aquí en controversia.

El Reglamento 6391 establece "las normas que rige la Selección, Admisión y Ocupación Continuada en los Residenciales Públicos…". Art. II. Provee, además, que toda solicitud considerada para admisión de vivienda deberá ser acompañada de, entre otros documentos, un certificado de antecedentes penales del solicitante. Art. VI(B)(1)(d). Una vez examinados los datos básicos de la solicitud, un funcionario de la A.V.P. clasificará al solicitante como "aparentemente elegible, o inelegible". Art. VI(E)(1). En el caso que el solicitante o algún miembro de la familia tenga historial criminal, será necesario verificar si han transcurrido al menos tres (3) años desde la fecha en que se completó la sentencia hasta la fecha de radicación de la solicitud. El Reglamento claramente dispone que "[s]i no ha transcurrido dicho

término la solicitud es inelegible por actividad criminal." Art. VI(E)(6)(d)(1).

De otra parte, para un individuo ser elegible para la ocupación continuada de una vivienda pública, es menester que sea un miembro de la composición familiar identificada como tal en el Contrato de Arrendamiento y que cumpla "con todos los requisitos de ocupación". Art. XIII(A).

Mediante revisiones periódicas a efectuarse al menos una (1) vez al año, se examinarán las circunstancias de los arrendatarios y los miembros de la composición familiar con el propósito de asegurar el cumplimiento con los requisitos de elegibilidad pertinentes. Art. XIV. Como parte del trámite para la ocupación continuada, cada jefe de familia viene obligado a completar una solicitud a esos efectos. Art. XIV(A)(2)(a). Entre los documentos requeridos como parte del reexamen periódico, se encuentra igualmente un certificado de antecedentes penales de cada miembro del grupo familiar que sea mayor de edad. Art. XIV(A)(2)(a)(2)(c).

Por último, el Reglamento 6391 también provee para cuando el jefe de familia muere. Sobre este particular dispone que "se resolverá el Contrato y se ejecutará uno nuevo que firmará un miembro de la familia declara[]do como tal en el Contrato de Arrendamiento que reúna los requisitos de elegibilidad para ocupación continuada y se haya quedado en la vivienda como remanente de la familia". Art. XVII(3)(a).

# IV

## Desahucio

Según lo dispuesto en el Artículo 621 del Código de Enjuiciamiento Civil de 1933, 32 L.P.R.A. sec. 2822 (2004), "[p]rocederá el desahucio contra… cualquier… persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna".

Se dará paso al desahucio en precario cuando no exista un conflicto de título sobre la propiedad cuya posesión se reclama. En dicho caso, es necesario que el reclamante posea derecho o título que justifique su ocupación. C.R.U.V. v. Román, 100 D.P.R. 318 (1971); Martínez Santiago v. Dalmau Andrades, 93 D.P.R. 191 (1966).

Existe conflicto de título cuando el demandado presenta prueba suficiente tendente a demostrar su derecho a ocupar el inmueble en controversia y que tiene un título tan bueno o mejor que el del demandante. C.R.U.V. v. Román, supra, pág. 322. La controversia sobre conflicto de título debe dilucidarse mediante un juicio ordinario. Véase, por ejemplo, C.R.U.V. v. Román, 100 D.P.R. 318, 321 (1971).

> La característica medular de un procedimiento civil sumario es lograr, lo más rápido y económicamente posible, la reivindicación de determinados derechos, reduciendo al mínimo constitucionalmente permisible el elenco de garantías procesales. Conlleva acortar términos – en ocasiones, hacerlos improrrogables – y prescindir de ciertos trámites comunes al proceso ordinario

> sin negar al demandado o querellado una oportunidad real de presentar efectivamente sus defensas.

Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234 (1992).

**V**

**Nulidad del Contrato de Arrendamiento del año 2007**

El derecho reclamado por el señor Molina en relación al Apartamento descansa en el Contrato de Arrendamiento originalmente otorgado por la señora Figueroa en junio de 2002. El peticionario sostiene que el contrato firmado en el año 2007 resulta nulo. Como fundamento para ello alega que, para ese entonces, la capacidad de su madre para prestar consentimiento se encontraba afectada por demencia senil. Plantea, por tanto, que el contrato firmado en el año 2002, donde él todavía aparecía designado como parte del grupo familiar destinado a ocupar la vivienda, continúa vigente.

Luego de escuchar el testimonio presentado en la vista y, conforme la evidencia sometida para su consideración, el foro de instancia declaró *Con Lugar* la Demanda de desahucio. A base de ello, resulta forzoso concluir que al juzgador sopesar el testimonio del peticionario y del señor Martínez, atinente a la incapacidad mental de su madre, y a la luz de la totalidad de la prueba que tuvo ante sí, descartó la versión de nulidad propuesta por no merecerle credibilidad.

En aquellos casos en que el ejercicio de nuestra función revisora conlleva evaluar determinaciones de hechos y adjudicaciones de credibilidad realizadas por el tribunal primario, nuestro examen estará guiado por el criterio de deferencia. Así pues, respetaremos los dictámenes del juzgador, excepto cuando éste haya incurrido en pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la prueba. Rivera Menéndez v. Action Service Corp., 2012 T.S.P.R. 73, 185 D.P.R. ___ (2012); Pueblo v. García Colón I, 182 D.P.R. 129 (2011); Laboy Roque v. Pérez y otros, 181 D.P.R. 718 (2011). De este modo reconocemos la importancia del comportamiento de un testigo en el entorno de una sala judicial al aquilatar su credibilidad. Rivera Menéndez v. Action Service Corp., supra; Pueblo v. García Colón I, supra; Laboy Roque v. Pérez y otros, supra.

Durante la vista de desahucio el señor Martínez indicó, en términos no específicos, que su madre había sufrido un derrame cerebral y padecía de Alzheimer; en ocasiones se olvidaba de las cosas; no podía hacerse cargo de sus finanzas, y necesitaba atención constante. El peticionario, por su parte, testificó lo siguiente en relación a la condición mental de su madre: "creo que le habían dado unos pequeños infartos" y a veces no reconocía a sus familiares o no recordaba quién era y se le olvidaban las cosas.

Sin embargo, al examinar con detenimiento el testimonio vertido ante el foro de instancia en lo atinente a la capacidad de la señora Figueroa, notamos que éste fue uno generalizado. Aparte de ello, no se detallaron fechas para poder deducir en qué momento específico, luego del año 2004, la señora Figueroa supuestamente perdió sus facultades mentales. Tampoco se sometió evidencia médica para sustentar las alegaciones de incapacidad mental.

De otra parte, los documentos que obran en autos, así como las explicaciones suministradas durante la vista, apoyan tanto la validez de los tres (3) Complementos al Contrato otorgados entre los años 2005 al 2007, como la del Contrato de Arrendamiento ejecutado en mayo de 2007. En ninguno de estos escritos se hace referencia al señor Molina.

Por disposición expresa consignada en el Artículo XIV(J) del Reglamento 6391,[6] el Complemento al Contrato pasa a formar parte del Contrato de Arrendamiento el cual se entenderá enmendado por los cambios consignados en los Complementos al Contrato suscritos subsiguientemente.

---

[6] El Artículo XIV(J) del Reglamento 6391 dispone lo siguiente:

El Complemento al Contrato de Arrendamiento de Vivienda Pública formará parte del Contrato de Arrendamiento. El mismo se llenará en original y copia cuando se efectúen reexámenes regulares, especiales y traslados de familias a otra vivienda dentro del mismo residencial o a otro proyecto de la Administración de Vivienda Pública que no conlleve cambios de jefe de familia. En tales situaciones, el Contrato original quedará en efecto excepto aquellas cláusulas que sean enmendadas por el Complemento al Contrato de Arrendamiento.

Los Complementos al Contrato correspondientes a los años 2002, 2003 y 2004 identificaban a la señora Figueroa y al peticionario como los componentes del grupo familiar. Sin embargo, indicó la Administradora del Residencial que, en el año 2005 la señora Figueroa sometió una certificación para dar de baja al peticionario del Contrato de Arrendamiento. Como razón para ello expuso lo siguiente: "confinado con una sentencia de seis años". Cónsono con lo anterior, en los Complementos a los Contratos suscritos en los años 2005 y 2006 por la señora Figueroa, aparece ésta como única inquilina del Apartamento.

A pesar de que para el otorgamiento del Contrato de Arrendamiento el 23 de mayo de 2007 la señora Figueroa estaba encamada e imposibilitada de firmarlo, se imprimieron sus huellas en el documento y compareció como testigo una vecina del lugar para dar fe de lo allí acontecido. Una trabajadora social también estuvo presente durante el proceso. De otra parte, obra en autos una certificación donde consta haberse orientado a la señora Figueroa de manera especial previo a otorgarse el Contrato de Arrendamiento. Igualmente, en dicha certificación aparecen las huellas de la señora Figueroa, así como la firma de la misma testigo que compareció cuando se suscribió el Contrato de Arrendamiento. Toda esta formalidad abona a la validez del acto.

Más importante aún, en el Complemento al Contrato fechado 25 de mayo de 2007, o sea con posterioridad al Contrato de Arrendamiento suscrito por el señor Martínez en calidad de tutor de su madre, tampoco se incluyó al señor Molina como parte de la composición familiar con derecho a ocupar la vivienda. Ello significa que, a través de este documento, el señor Martínez reiteró lo dispuesto dos (2) días antes por la señora Figueroa, a los efectos de que ella era la única residente del Apartamento para efectos del contrato.

Consideramos que, según consignado en la propia Hoja de Tutor, la designación del señor Martínez como "tutor", efectuada el 25 de mayo de 2007, fue estrictamente para propósitos de que fuera la persona responsable de dar cumplimiento con los términos del Contrato de Arrendamiento, así como de realizar los pagos y otras gestiones frente a la A.V.P., ya que la arrendataria estaba encamada. Sin embargo, ello no comprendió una determinación de senilidad por un facultativo médico, como tampoco por los tribunales. Por consiguiente, no constituye evidencia de que la señora Figueroa careciese de capacidad legal para contratar posterior al año 2002.

A base del expediente, resulta razonable la determinación de validez del Contrato de Arrendamiento del año 2007, así como los Complementos al Contrato correspondientes a los años 2005, 2006 y 2007. Decretamos, por tanto, que dicho dictamen no se deriva de

pasión, prejuicio, parcialidad o error manifiesto. De otra parte, surge claramente que la exclusión del peticionario para efectos del Apartamento fue originada por la propia señora Figueroa en el año 2005 y no por la A.V.P. como sugiere la parte peticionaria. Los Complementos a Contrato subsiguientes a esa fecha, al igual que el Contrato de Arrendamiento del año 2007, así lo reiteran.

## VI

### Interés propietario

Conforme los principios de derecho aplicable, el señor Molina venía obligado a probar su interés propietario sobre la propiedad en cuestión para activar entonces su derecho a las garantías procesales del debido proceso de ley como defensa oponible frente a la Demanda de desahucio. Veamos.

El Contrato de Arrendamiento original fue suscrito por la señora Figueroa y la A.V.P. En el mismo aparece designado el señor Molina como parte del grupo familiar con derecho a ocupar regularmente la vivienda. Dicho contrato comenzó a regir desde el mes de junio de 2002 y, según surge del mismo, "continuará vigente mientras el Arrendatario y su familia reúnan los requisitos para ser residentes de vivienda pública, de acuerdo con lo que establezcan las leyes y reglamentos aplicables a los beneficios del Programa de Vivienda Pública, y mientras

cumplan con las cláusulas y condiciones estipuladas en este contrato."

No obstante, de los autos se desprende que en el año **2005,** mediante el Complemento al Contrato que se produjo en esa fecha como parte del proceso rutinario del reexamen regular, el nombre del señor Molina no fue incluido en el referido contrato por su señora madre. Cabe notar que para entonces éste había ingresado a prisión. Este hecho es de crucial importancia porque marca el momento en que se desvinculó al señor Molina de su derecho a vivir en el Apartamento junto a la señora Figueroa. No obra en autos evidencia alguna que acredite que dicha eliminación se realizó por iniciativa de la A.V.P. en violación al procedimiento establecido en el Reglamento para excluir a un residente. Por el contrario, conforme la documentación sometida en el caso, es innegable que dicha eliminación se debió a la exclusiva voluntad de la señora Figueroa al así consignarlo expresamente en el proceso del reexamen regular de su vivienda.

A pesar de que el señor Molina regresó a residir al Apartamento alrededor de **mayo de 2006,** luego de salir de la cárcel, la señora Figueroa, en calidad de jefe de familia, nunca volvió a incluirlo como parte de la composición familiar con derecho a ocupar el mismo, a pesar de las oportunidades que tuvo para hacerlo. A esos efectos, notamos que no se mencionó al peticionario ni en el Complemento al Contrato de junio de 2006, ni en el

nuevo Contrato de Arrendamiento suscrito el 23 de mayo de 2007, ni en el Complemento al Contrato de 25 de mayo de 2007.

Por consiguiente, conforme la reglamentación aplicable, desde el año 2005 el señor Molina no tiene interés propietario alguno que conste en un Contrato de Arrendamiento con la A.V.P.

El señor Molina alega que, el hecho de que la Administración del Residencial conocía que residía en el Apartamento desde su salida de prisión, le confirió un interés propietario sobre el Apartamento. Sin embargo, el aludido conocimiento al que se refiere el peticionario, combinado con la alegada inacción por parte de la A.V.P., sin más, no se traduce en un interés propietario sujeto a las protecciones del debido proceso de ley. Es decir, la expectativa unilateral de continuar ocupando el Apartamento por el mero hecho de haber residido allí toda su vida, pero, sin formar parte del contrato desde el 2005, no es suficiente. Según señalamos anteriormente, "[e]n nuestra jurisdicción, para que se active la referida protección constitucional que otorga este derecho en su vertiente procesal, es necesario que exista un interés individual de libertad o propiedad". Calderón Otero v. C.F.S.E., *supra*, pág. 398.

En resumen, al momento en que falleció la señora Figueroa, el señor Molina no formaba parte del Contrato de Arrendamiento con la A.V.P., lo cual le hubiese permitido

solicitar la ocupación continuada del Apartamento. Por lo tanto, la A.V.P. no venía obligada a utilizar una vía alterna al procedimiento de desahucio para obligarlo a abandonar el mismo.

## VII

Aun cuando resolvemos que el señor Molina no tiene un derecho cobijado por el debido proceso de ley, en lo atinente a su reclamación de continuar ocupando el Apartamento por no formar parte del Contrato de Arrendamiento con la A.V.P., entendemos prudente atender, aunque brevemente, los primeros cinco (5) errores señalados por el peticionario en su recurso.[7]

En su primer señalamiento de error, aduce el peticionario que al disponer del desahucio mediante el procedimiento sumario la determinación del tribunal de instancia estaba condicionada por lo dictaminado previamente en la *Resolución Fijando un Estado Provisional de Derecho*.

Según señalado en su Exposición de Motivos, la Ley 140 fue promulgada con el propósito de "establecer un procedimiento de ley rápido, económico y eficiente para la adjudicación provisional de controversias por los Jueces Municipales y los Jueces de Distrito". 32 L.P.R.A. sec. 2871 n. (2004). Como el propio título sugiere, el estado provisional de derecho constituye una determinación de

---

[7] El sexto señalamiento de error, referente a la temeridad, lo resolvemos más adelante.

naturaleza temporera dirigida a atender una situación entre las partes que amerita intervención judicial inmediata. Se ha consignado expresamente en el estatuto que una orden emitida bajo el palio de esta ley no dispone de los derechos reclamados en sus méritos, por lo que no tiene efecto de cosa juzgada.[8]

Contrario a lo que alega el peticionario, y según aquí se explica, en el trámite del desahucio no se concretizó un conflicto de título, por lo que correspondía al tribunal de instancia proceder a través del procedimiento sumario.

De otra parte, a tenor con la Ley 140 entendemos que, independientemente del asunto adjudicado conforme a sus disposiciones, el foro juzgador no venía obligado por el mismo. Su rol era atender el asunto del desahucio conforme la prueba que tuvo ante sí.[9]

Por consiguiente, no se cometió el error señalado.

De otra parte, como segundo señalamiento, el peticionario impugna la procedencia del desahucio basado en la política pública que promueve un ambiente digno para

---

[8]    A esos efectos, el Artículo 5 de la Ley 140 dispone: "Una orden resolviendo una controversia y fijando un estado provisional de derecho, según este capítulo, será inapelable, pero no constituirá cosa juzgada respecto a ninguno de los puntos adjudicados en la misma ni impedirá ningún otro trámite judicial reclamando daños y perjuicios u otro derecho". 32 L.P.R.A. sec. 2875 (2004).

[9]    Durante la vista en el caso de desahucio desfiló evidencia relacionada a la alegada nulidad del Contrato de Arrendamiento del año 2007; sobre las imputaciones de violación al debido proceso de ley planteadas por el peticionario, así como sus múltiples reclamos para sustentar su derecho a ocupar la propiedad. El tribunal de instancia tuvo la oportunidad de sopesarlas todas y, a base de la prueba que tuvo ante sí, formuló su determinación. Concluyó que ninguno de los posibles fundamentos utilizados por el señor Molina como base para reclamar un derecho a permanecer en el Apartamento se encontraba asentado en derecho.

las personas con impedimentos. Sin embargo, no cita precepto de ley alguno que, a base de su impedimento, lo exima del cumplimiento cabal de los requisitos establecidos para tener derecho a residir en una vivienda pública en Puerto Rico. Quedó claro que, aparte de no haber sometido todos los documentos exigidos como parte de la solicitud de vivienda pública por derecho propio, el peticionario tampoco aparecía designado como componente de la unidad familiar en el Contrato de Arrendamiento del año 2007, elemento indispensable para cualificar para la ocupación continuada del Apartamento.

Por consiguiente, carece de mérito el argumento relacionado al segundo señalamiento de error alegado.

Próximo, el peticionario sostiene que erró el tribunal al resolver que la alegada notificación verbal de la A.V.P., mediante la cual le informó que no cualificaba para ser incluido en el grupo familiar del Contrato de Arrendamiento de su madre, estuvo acorde a las disposiciones del Reglamento 6391.

Lo único que consta en el récord, en lo atinente a una posible notificación, es la orientación provista por la Sra. Rosa Figueroa Alvarado en la cual se hizo referencia a los documentos necesarios para que el peticionario solicitara su inclusión en el contrato de su madre. Al adentrarse en el contenido de la reglamentación, se le informó además, que posiblemente éste no cualificaría debido a su récord criminal. Sin

embargo, una mera orientación sobre los pormenores de un reglamento que se presume es de conocimiento general no constituye, de por sí, una notificación de denegatoria formal por parte de la A.V.P.

Cabe señalar que la A.V.P. no tenía razón para actuar sobre dicha solicitud hasta tanto la parte interesada hiciera entrega de todos los documentos reglamentarios. Cónsono con lo anterior, la agencia no venía obligada a proveer notificación formal alguna en lo referente a este asunto.[10]

Por consiguiente, este error también carece de méritos.

Lo propuesto en el cuarto error amerita aclaración. Según el señor Molina, su exclusión del contrato violó su derecho a un debido proceso de ley porque no se hizo acorde a las disposiciones del Reglamento para la Cancelación de Contrato y/o Realizar Reexamen Especial y/o Transferir el Contrato a Remanentes de Familia por Actividad Criminal, Reglamento Núm. 6416 de la Administración de Vivienda Pública, 25 de marzo de 2002 (Reglamento 6416).[11] El mismo establece el procedimiento que debe utilizarse para la cancelación del contrato de vivienda pública, dar de baja a un miembro de la

---

[10] En lo que respecta a la solicitud de vivienda por derecho propio, consta en autos que no fue sino hasta el 12 de febrero de 2008, ya recaída la Sentencia de desahucio, que el peticionario formalizó el proceso correspondiente ante la A.V.P.

[11] El Reglamento 6416 establece las disposiciones de la Ley 171-2001, 17 L.P.R.A. sec. 1015 *et seq.* (2009).

composición familiar o transferir el contrato por razón de actividad criminal. Art. 2, Reglamento 6416.

No se desprende de los autos que el desahucio instado en su contra haya sido motivado por razón de actividad criminal del peticionario según provisto en el Reglamento 6416. Lejos de llegar a la conclusión atribuida, el Tribunal de Apelaciones se limitó a indicar que el desahucio procedía ya que el señor Molina no cualificaba para la "ocupación continuada" por su récord criminal.

No obstante, independientemente de que su historial delictivo lo hiciese inelegible, aclaramos que el señor Molina no podía solicitar ocupación continuada debido a que, como requisito para ello, tenía que formar parte de la composición familiar en el correspondiente Contrato de Arrendamiento. Acorde expusimos anteriormente, para la fecha en que murió la señora Figueroa, el nombre del señor Molina ya no constaba en dicho documento. Éste había cesado de ser parte del grupo familiar en el Contrato de la arrendataria desde el año 2005.

Contrario a lo intimado por el señor Molina, el proceso de desahucio no estuvo fundamentado en sus actividades criminales según dictaminado en el Reglamento 6416. Más bien la A.V.P. actuó basada en la falta de un derecho de posesión asentado en la reglamentación aplicable independiente de sus antecedentes penales. El peticionario no tenía derecho a la ocupación continuada del Apartamento ya que no aparecía como miembro del grupo

familiar. Tampoco había completado el proceso para solicitar vivienda pública por derecho propio puesto que faltaba su Certificado de Antecedentes Penales para la A.V.P. poder considerarla.

El peticionario aduce en el quinto error que las disposiciones de la Ley 171-2001, 17 L.P.R.A. sec. 1015 *et seq.* (2009) (Ley 171), no establecen que la conducta criminal opera como exclusión automática para ser admitido a vivienda pública o continuar residiendo en dicho lugar.

El mencionado estatuto respondió a la directriz emitida por la Administración del Presidente William J. Clinton en el año 1996, conocida comúnmente como "Una falta y estás fuera", mediante la cual se procuró mantener las viviendas públicas libres de drogas y actividad criminal. Exposición de Motivos de la Ley 171. Acorde con el mandato federal, a través del mencionado estatuto se implantaron medidas para la cancelación de un Contrato de Arrendamiento de vivienda pública en casos de incumplimiento de contrato por razón de actividad criminal.

De entrada, cabe mencionar que dichas disposiciones estatutarias van dirigidas al arrendatario que guarda una relación contractual con la A.V.P. Por ende, le son inaplicables al peticionario quien no forma parte de un Contrato de Arrendamiento.

De todos modos, tampoco existe evidencia de que se le haya desahuciado por conducta criminal. Previo a la

Sentencia de desahucio, no se calificó la idoneidad del señor Molina para ocupar el Apartamento a base de su historial criminal. La A.V.P. no estaba en posición de hacerlo puesto que el peticionario no cumplía con el requisito de constar en el Contrato de Arrendamiento de la señora Figueroa, requisito indispensable para la ocupación continuada. Tampoco tenía ante sí una solicitud de vivienda por derecho propio debidamente complementada con los documentos de rigor.

## VIII

Por último, el peticionario impugna la imposición de una sanción por temeridad y, al respecto, señala que no actuó con temeridad al reclamar la vindicación de sus derechos.

Este Tribunal se ha expresado estableciendo que el concepto de temeridad es uno amplio. Blás v. Hosp. Guadalupe, 146 D.P.R. 267 (1998).

La temeridad es "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". Marrero Rosado v. Marrero Rosado, 178 D.P.R. 476, 504 (2010); Colón Santos v. Coop. Seg. Mult. P.R., 173 D.P.R. 170 (2008).

Como regla general, un tribunal apelativo sólo intervendrá con una determinación de temeridad si media un claro abuso de discreción. Dicha determinación descansa

en la sana discreción del tribunal sentenciador. S.L.G. Flores-Jiménez v. Colberg, 173 D.P.R. 843, 866 (2008).

El profesor Hernández Colón estima que "[l]a temeridad se determina en virtud de la claridad del derecho aplicable y de los hechos demostrablemente ciertos". R. Hernández Colón, Derecho Procesal Civil, 5ta Ed., Lexis Nexis, 2010, pág. 391.

Luego de examinados los autos, y ante los hechos tan particulares que informa esta causa y que ameritó nuestra intervención, somos de la opinión que el peticionario no fue temerario. Por consiguiente, entendemos que se cometió el error señalado.

## IX

En resumen, la revisión interpuesta en este recurso se limita a verificar si existe defensa oponible al desahucio por el peticionario contar con un derecho para permanecer en la propiedad. Según explicamos anteriormente, no le cobijaba tal derecho al señor Molina ni bajo la reglamentación de la A.V.P. ni a base de los estatutos citados en su escrito.

No obstante, hacemos la siguiente salvedad. Aunque es nuestro deber ministerial aplicar estrictamente el derecho relevante a los hechos del caso, este Tribunal es sensible a la penosa situación por la que atraviesa el señor Molina quien, a su avanzada edad y con impedimento visual, está al borde de ser desplazado de la única

vivienda que conoce. Notamos que en la Sentencia emitida por el Tribunal de Apelaciones, KLRA20080572, se hace constar que la pena de prisión impuesta al señor Molina "se extinguirá… el 25 de noviembre de 2008." Si en efecto, para el 2008 el peticionario ya cumplió con el término impuesto en su sentencia criminal, ello le daría una oportunidad para cambiar radicalmente su destino en términos de un lugar para vivir.

El Reglamento 6391 dispone que una solicitud de vivienda será inelegible por historial criminal si a la fecha de su radicación no han transcurrido más de tres (3) años desde que se completó la sentencia. Art. VI(E)(6)(d)(1)(i). En el caso del señor Molina, dicho periodo de no elegibilidad venció a finales del mes de noviembre de 2011. Por lo tanto, entendemos que en la actualidad el peticionario cualificaría para vivienda pública, de cumplir con los otros requisitos reglamentarios pertinentes[12] y así esperamos que suceda.

Este caso presenta a un individuo con impedimento visual[13] quien ya pagó su deuda con la sociedad y, como cuestión de justicia, amerita se le brinde la oportunidad

---

[12]     No aparece información en el expediente que refleje conducta delictiva ulterior que le haga inmeritorio de vivienda pública. Tampoco obran en autos quejas de su comportamiento ya sea por sus vecinos o la administración. De hecho, según obra en la Resolución Fijando un Estado Provisional de Derecho, la Administradora del Residencial testificó durante dicho proceso que "el comportamiento del señor Molina era uno excelente".

[13]     Precisamente, el Reglamento 6391 le concede Preferencia I a solicitantes que residan solos y que tengan alguna incapacidad. Art. V(C)(9).

de corregir la situación de vivienda anómala por la que atraviesa.

**X**

A base de los fundamentos antes expuestos, se modifica la Sentencia emitida por el Tribunal de Apelaciones el 18 de diciembre de 2008 a fin de eliminar la suma de quinientos dólares ($500.00) impuesta por temeridad. Así modificada, se confirma la misma.[14]

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con opinión escrita, a la cual se unen el Juez Presidente señor Hernández Denton, la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

---

[14] Conforme con lo anterior, se deja sin efecto nuestra Resolución del 12 de mayo de 2010 declarando *Ha Lugar* la *Moción de Auxilio de Jurisdicción* presentada por la parte peticionaria.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Estado Libre Asociado de
Puerto Rico, Administración
de Vivienda Pública, etc.

   Recurridos                           AC-2009-008

       v.

Edwin Molina Figueroa

     Peticionario


Opinión Disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ, a la cual se unen el Juez Presidente SEÑOR HERNÁNDEZ DENTON, la Jueza Asociada SEÑORA FIOL MATTA y la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ


San Juan, Puerto Rico, a 21 de agosto de 2012.

Respetuosamente disiento por entender que se violentaron los derechos de la parte peticionaria y que el Reglamento para la selección, admisión y ocupación continuada en los residenciales públicos contiene remedios para atender situaciones como las que nos ocupa. No puedo hacerme de la vista larga e ignorar las garantías expresas que contiene la mencionada reglamentación.

I

El Sr. Edwin Molina Figueroa es un no vidente que ha residido desde su nacimiento en el Apartamento Núm. 2 del Edificio Núm. 19 del

Residencial Enrique Catoni de Vega Baja, propiedad de la Administración de Vivienda Pública (A.V.P.). Este apartamento ha sido su hogar. El señor Molina Figueroa vivía en el mencionado lugar junto a su madre, la Sra. Petra Figueroa Olivo, quien era la titular del contrato de arrendamiento de la propiedad.

El 11 de junio de 2002 la señora Figueroa Olivo renovó su contrato de arrendamiento con la A.V.P. En ese contrato incluyó al señor Molina Figueroa como miembro de la composición familiar. De igual forma, el señor Molina Figueroa fue incluido en los complementos de contrato de los años 2002 al 2004.

Posteriormente, el peticionario fue convicto por una infracción al Art. 406 de la Ley de Sustancias Controladas. Por esa condena estuvo confinado desde el 19 de abril de 2005 hasta el 28 de abril de 2006, cuando la Administración de Corrección le extendió un pase por buena conducta y por su condición de salud. El pase fue brindado debido a que su salud estaba empeorando y debía seguir con su tratamiento. Así, desde el 5 de mayo de 2006 se acogió a los beneficios de Pase extendido por razón de salud, Ley Núm. 27 de 20 de julio de 1989, 4 L.P.R.A. 1112 (e) (2010). En el contrato entre el señor Molina Figueroa y la Administración de Corrección se indicó que su hogar sería el apartamento al que hemos hecho referencia. Es decir, el señor Molina Figueroa estaba obligado a permanecer en dicho apartamento para cumplir con el programa establecido por la Administración de Corrección.

El 20 de mayo de 2005 la señora Figueroa Olivo suscribió un Complemento de contrato en el cual no incluyó al señor Molina Figueroa. En el 2007 se realizó un nuevo contrato en el que, por estar la señora Figueroa Olivo encamada, se utilizaron sus huellas digitales. En este contrato tampoco se incluyó al señor Molina Figueroa.

El peticionario sostiene que tan pronto advino en conocimiento de que no era parte del mencionado contrato, solicitó ser incluido en éste en varias ocasiones. También alegó que verbalmente le notificaron que no cumplía con los requisitos.

El 6 de septiembre de 2007, el peticionario solicitó a la Administración del Residencial Enrique Catoni, mediante comunicación vía correo certificado con acuse de recibo, que se ejerciera la acción administrativa correspondiente para que fuera incluido en el contrato. En la carta se explicó la situación particular que estaba atravesando el ciudadano, su impedimento visual de tipo degenerativo y las necesidades que tenía. Al no recibir contestación alguna, el 24 de septiembre de 2007 enviaron una segunda misiva. En ésta expresaron que consideraban que retirarlo del apartamento era una acción prematura, ya que no se había expresado la Administración en cuanto a las múltiples solicitudes del peticionario para ser parte del contrato.

El 4 de octubre de 2007 la Administración presentó una demanda de desahucio ante el Tribunal de Primera Instancia. Antes de ser emplazado, el 16 de octubre de 2007 el señor Molina Figueroa presentó una petición al amparo de la Ley

sobre controversias y estados provisionales de derecho, Ley Núm. 140 de 23 de julio de 1974. El foro primario emitió una resolución fijando un estado provisional de derecho, el cual era obligatorio mientras no se ventilara el caso en un juicio ordinario. Ordenó que el señor Molina Figueroa fuera mantenido en ese u otro apartamento del residencial. El foro primario señaló que la administradora fue incluso consultada para la probatoria y dio la aprobación para ésta. Expresó el tribunal que el señor Molina Figueroa ha estado viviendo de forma pública y pacífica, que es un no vidente, y que no podíamos abstraernos de esa realidad y desecharlo a su suerte.

Surge del expediente una carta del 6 de diciembre de 2007 entregada a la mano de la administradora del residencial, la Sra. Rosa Figueroa, en la cual la Corporación de Acción Civil y Educación, entre otras cosas, le solicitaba que se le brindara acomodo razonable al señor Molina Figueroa. Ap. III, Expediente de Tribunal de Apelaciones. Se explicó en esta carta que el peticionario era un no vidente a quien debía brindársele un acomodo razonable a tenor con la Ley ADA por la cual estaba cubierto. En específico, señalaron que procedía modificar algunos criterios reglamentarios, políticas, procedimientos y normas administrativas con el propósito de que el derecho de vivienda del señor Molina Figueroa no se viera afectado. Todos estos intentos fueron infructuosos.

El proceso de la demanda de desahucio siguió su curso. El hermano del peticionario, el Sr. Luis Martínez Figueroa,

quien se encargaba de pagar el apartamento así como las otras cuentas de la señora Figueroa Olivo, testificó durante la vista que el señor Molina Figueroa vivió toda su vida en el apartamento. Transcripción de Vista de Seguimiento de 19 de diciembre de 2007, pág. 59. Además, expresó que solicitó incluir al señor Molina Figueroa en el contrato del 2007 y que le dijeron que llevara los documentos. Transcripción de Vista, íd., pág. 64. Arguyó que incluyó los documentos excepto el certificado de buena conducta ya que le explicó a la administradora que su hermano estaba cumpliendo una sentencia. Así las cosas, luego de que muere su madre fue a pagar la renta del mes de septiembre, pero no le aceptaron la misma y le dijeron que la administradora quería hablar con él. Según surge de su testimonio, al ir le dijeron que le realizaría una entrevista; sin embargo testificó que no se le realizaron preguntas sino que la administradora escribió en un papel y le requirió firmar, y que él le dijo que no firmaría hasta que revisara lo que decía. Alegó que una empleada firmó por él indicando que se había negado a firmar. Transcripción de Vista, íd., pág. 66. Testificó que luego de este incidente no ocurrió más nada, ni hubo notificación posterior. Además, indicó que el hermano no tiene otro sitio donde vivir. Transcripción de la Vista, íd, pág. 68.

Por su parte, el señor Molina Figueroa arguyó que siempre había sido parte del contrato y que al regresar al apartamento luego de que se le extendiera el pase extendido se entera de que no fue parte de éste en el 2005. Al tener

conocimiento de esta situación, realizó las gestiones para que fuera incluido. El peticionario alegó que le entregó los documentos, incluyendo el certificado de antecedentes penales. Sin embargo, la administradora le notificó verbalmente que eso no servía. Según surge de su testimonio, posteriormente le dejaron una nota en la puerta notificando el desahucio. Alegó que no lo apercibieron de algún derecho a revisión o un derecho a vista administrativa.

Durante la vista en el Tribunal de Primera Instancia el señor Molina Figueroa expresó acerca de como se afectaría con el desahucio lo siguiente:

> P. ¿Cómo usted se afectaría si fuera desahuciado?
> R. Bendito, imagínese, yo no veo, yo no sé para dónde yo voy a ir. Que sea lo que Dios quiera.

Transcripción de Vista, íd, pág. 76.

Sin embargo, el Tribunal de Primera Instancia declaró ha lugar la demanda de desahucio en precario. Basó su dictamen en que la denegación de la A.V.P. se debió a que no había transcurrido tres años y un día desde que se extinguió la sentencia en el caso criminal del peticionario. Además, expresó que procedía el desahucio ya no existía un contrato de arrendamiento. El señor Molina Figueroa presentó una moción en la cual solicitó determinaciones adicionales de hechos y conclusiones adicionales de derecho. Además, presentó una solicitud de reconsideración. Ambas fueron denegadas.

No conforme con la sentencia dictada, el señor Molina Figueroa presentó un recurso de apelación ante el Tribunal

de Apelaciones. Ese mismo día, ante la inminencia de la ejecución del lanzamiento, presentó ante el mencionado tribunal una moción en auxilio de jurisdicción en la cual solicitó que se paralizara la orden de lanzamiento y que se dejara sin efecto la sentencia del Tribunal de Primera Instancia.

El 18 de diciembre de 2008 el Tribunal de Apelaciones emitió una sentencia en la cual confirmó el dictamen del foro primario. Indicó el foro apelativo intermedio que el peticionario nunca presentó el certificado de antecedentes penales, por lo que no completó el proceso de solicitud.

Nuevamente inconforme, el peticionario recurrió ante nos mediante un recurso de apelación. Sostuvo que el Tribunal de Apelaciones había cometido varios errores. Entre estos, el determinar que la notificación verbal hecha al señor Molina Figueroa informándole que no cualificaba para una nueva vivienda fue conforme con el debido proceso de ley y con los requisitos que se han establecido en los reglamentos. El 15 de junio de 2009 expedimos y acogimos el recurso como uno de *certiorari*. Posteriormente, el 12 de mayo de 2010 declaramos con lugar la solicitud de paralización de la Orden de Lanzamiento dictada por el Tribunal de Primera Instancia.

II

A.

Los contratos de arrendamiento en controversia están sujetos al Reglamento para la selección, admisión y ocupación continuada en los residenciales públicos, Reglamento Núm. 6391, 21 de enero de 2002. Este reglamento establece las normas que aplican a los solicitantes y residentes de vivienda pública.

El Art. VI del Reglamento citado establece el trámite para el proceso de solicitud para admisión de vivienda. Este artículo dispone que una vez radicada la solicitud, la administración le requerirá al solicitante una serie de documentos.

El inciso E del Art. VI indica que al momento de radicarse una solicitud la Administración clasificará al solicitante como aparentemente elegible, o inelegible, tomando en consideración la información y los documentos presentados. Toda información relacionada a la clasificación de un solicitante deberá ser documentada y archivada en el expediente.

En ese mismo inciso se establece que una vez se verifiquen los datos básicos de la solicitud, se preparará un resumen que contenga la elegibilidad de acuerdo al reglamento. Se toman en consideración la elegibilidad a tenor con los criterios del reglamento, incluyendo los criterios para denegar admisión por actividad criminal, droga y abuso de alcohol. Art. VI (E)(6)(d)(1). De esta

forma, los criterios acerca de determinación de admisión por actividad criminal son parte del examen de elegibilidad del solicitante.

En cuanto a los criterios para denegar la admisión por historial criminal el inciso F claramente establece:

> En caso de que se tenga evidencia que por una o más razones el solicitante es inelegible para admisión, la Administración le notificará por escrito dentro de los diez (10) días laborables a partir del momento de la determinación del solicitante, las razones, fundamentos y datos utilizados para llegar a tal determinación. Se le indicará que de no estar de acuerdo con la determinación de su caso, tiene derecho a solicitar una Vista Informal dentro de los diez (10) días siguientes a la fecha de la notificación. La vista será conducida por un Oficial Examinador.

De no poderse determinar la elegibilidad del solicitante, el inciso (d) señala que se le informará por escrito las razones que impiden esta determinación.

En cuanto a las situaciones en las cuales el jefe de familia muere, el Art. XVII (3) nos señala cuatro circunstancias. El inciso (a), el cual es la única circunstancia de esta sección citada por la mayoría, establece que se resolverá el contrato y se ejecutará uno nuevo que lo firmará un miembro de la familia que reúna los requisitos de elegibilidad para ocupación continuada y que se haya quedado en la vivienda como remanente de la familia.[15]

Por su parte, el inciso (c) contiene los remedios para situaciones en las que ningún miembro remanente de la

---

[15] El Art. XIII establece los criterios de elegibilidad para ocupación continuada.

familia califica como elegible para ocupación continuada o fuera un menor de edad sin tutor. En estas circunstancias el reglamento requiere que el Arrendador coordine con agencias gubernamentales e instituciones privadas para la solución apropiada del caso.

B.

En materia administrativa, una vez una agencia ha promulgado un reglamento para facilitar su proceso decisional y limitar el alcance de su decisión viene obligada a observarlo estrictamente. Rivera Sierra v. Supte. Anexo 500 Guayama, 179 D.P.R. 98 (2010); García Cabán y otros v. U.P.R., 120 D.P.R. 167 (1987). Las reglas o reglamentos son expresiones de aplicación general que interpretan, implantan o prescriben la ley o la política pública. Hernández Chiquez v. F.S.E., 152 D.P.R. 941, 951 (2000). Es por esta razón que los reglamentos promulgados por una agencia tienen fuerza vinculante, habida cuenta que determinan derechos, deberes u obligaciones de las personas o individuos. Íd. Las reglas promulgadas por una agencia tienen fuerza de ley y la agencia no tiene discreción para aplicarlas.

III

Al aplicar el marco reglamentario anteriormente enunciado a los hechos del caso particular ante nuestra consideración, llegamos a una conclusión distinta a la de la mayoría de este Tribunal.

La señora madre del peticionario falleció el 26 de agosto de 2007. Era ella quien figuraba como jefa de familia en el contrato de arrendamiento con la A.V.P. para el apartamento de dos habitaciones en el que había residido el señor Molina Figueroa toda su vida y constituía su hogar. El Art. XVII acerca de las resoluciones o cambios de contrato de arrendamiento establece, en el ya mencionado inciso, tres situaciones en las que el jefe de familia que firma el contrato muere. La mayoría sostiene que el señor Molina Figueroa no tenía derecho a la ocupación continuada ya que no aparecía en el contrato como parte de la composición familiar. Aunque reconocemos este hecho, el mismo no es suficiente para concluir que procede desahuciar al peticionario.

La situación particular ante nos es una de muerte del jefe de familia que firma el contrato. Ante la posibilidad de que el señor Molina Figueroa no cumpliera con los requisitos para calificar como elegible para ocupación continuada, ello no exime de observar el citado inciso XVII (3) (c). Como discutimos, este inciso vislumbra situaciones especiales en las cuales no se cumplen con los requisitos de ocupación continuada que requiere el reglamento. La mencionada disposición utiliza la expresión miembro remanente de la familia y no composición familiar. La definición de familia que brinda el Reglamento citado es un grupo de dos o más personas relacionados por sangre, matrimonio, por adopción o por ser hijos de crianza que

convivan regularmente en la misma vivienda.[16] Incluso se considera familia a otros miembros que estén ausentes temporeramente cuyos ingresos o recursos, si los tuviera, estén disponibles para sufragar los gastos del grupo familiar. Íd.

Señala claramente la citada disposición que, en estas situaciones, "el Arrendador deberá coordinar con agencias gubernamentales e instituciones privadas para la solución apropiada del caso". Art. XVII (3) (c). La solución apropiada del caso no es desahuciar al familiar sin más. Precisamente, el arrendador debe de disponer de estas situaciones con las agencias e instituciones pertinentes. Considero que una situación como la del caso de epígrafe en la cual un familiar –hijo- quien sufre de un impedimento visual, y quien ha residido toda su vida en el apartamento, debería ser objeto de una solución adecuada. Dejarlo a su suerte, sin un hogar a donde ir claramente no es la solución apropiada del caso.

Uno de los factores que la agencia debió considerar lo es la severa condición del señor Molina Figueroa. Existe una clara política pública del Estado a que toda persona con impedimento pueda vivir en un ambiente de tranquilidad, respeto y dignidad que satisfaga sus necesidades básicas de rehabilitación y vivienda. Art. 4 de la Carta de Derechos de las Personas con Impedimentos, Ley. Núm. 238 de 23 de agosto de 2004. Como parte de los derechos generales de las personas con impedimentos se encuentra el identificar con

---

[16] Art. III, Reglamento Núm. 6391.

qué pariente o parientes desea convivir o el lugar donde desea hacerlo en un ambiente de amor, comprensión y sosiego. Íd. Es política pública, además, el garantizar la coordinación de los recursos y servicios del Estado para atender las necesidades colectivas y particulares de las personas con impedimentos de acuerdo con su condición. Art. 3 de la Carta de Derechos de las Personas con impedimentos.

Además, la política en cuanto a las protecciones y procedimientos para personas con impedimentos permea en la propia reglamentación promulgada por la Administración de Vivienda Pública. Por ejemplo, el Art. V del Reglamento Núm. 6391 establece los criterios y prioridades en la selección. Incluye entre las personas con preferencia las personas incapacitadas y la definición del reglamento de personas incapacitadas incluye las personas ciegas.

El obviar dichas garantías e interpretar de manera rígida el procedimiento tiene como resultado que se violen los más mínimos parámetros de entendido social y calidad humana, afectando a un ciudadano que ha cumplido con su deuda con la sociedad y el que solamente solicita que se le permita permanecer en el que ha sido su hogar durante toda su vida. Siendo un no vidente, el removerlo de su hogar y de su comunidad tiene unas repercusiones para su vida diaria. Esta actuación incide en la manera en que vive y en sus necesidades. Sabido es que una persona con impedimento visual debe estar familiarizada con el lugar que habita para así poder valerse por sí misma. Es esencial para una persona ciega ser capaz de vestirse, comer, desenvolverse

de manera independiente y no correr peligro. El permanecer en lugares conocidos facilita la realización de las actividades diarias. Ciertamente no es lo mismo retirar de su hogar a una persona que goza de salud, que retirar al señor Molina Figueroa. El retirarlo de su hogar sería el retirarlo de lo que es una rutina personal que le permite llevar una vida plena.

No le pido a la mayoría que brinde un trato privilegiado, sino que le reconozca al peticionario las garantías reglamentarias aquí discutidas. Debemos mencionar que para obtener el pase extendido, el señor Molina Figueroa atravesó un riguroso proceso de evaluación. El apartamento en controversia fue el señalado por la Administración de Corrección para que el peticionario terminara de cumplir su sentencia. Entre los factores para determinar el lugar en el que debía permanecer se encuentran su condición y salud. Determinaron que el mejor lugar para estar era el apartamento en cuestión, esto debido a su condición.

Actualmente han transcurrido los tres años requeridos luego de cumplida la sentencia del señor Molina Figueroa. Acerca de su conducta, a preguntas del Tribunal la propia administradora expresó que el comportamiento del señor Molina Figueroa era uno excelente. Resolución dictando un estado provisional de derecho, págs. 76-79 del Ap. de *Certiorari*. Es una realidad que el señor Molina Figueroa no tiene otro lugar donde ir. Tanto el señor Molina Figueroa como su hermano aseguraron que el peticionario carece de

otra vivienda o de otros familiares que puedan hacerse cargo de él.

En cuanto al proceso que se siguió con relación a la solicitud del señor Molina Figueroa consideramos que fue uno en contravención a la reglamentación aplicable. La prueba testifical aportada durante la vista de desahucio demuestra que el peticionario nunca recibió una contestación por escrito de parte de la administradora del residencial, a pesar de las múltiples gestiones realizadas para solicitar permanecer en el apartamento. Transcripción de Vista de Seguimiento de 19 de diciembre de 2007, págs. 47-48. La administradora admitió que se comunicó verbalmente con el señor Molina Figueroa y le dijo que no cumplía con los requisitos del Reglamento Núm. 6391. Sostuvo que no habían entregado los documentos completos, por lo que no se había radicado certificación para incluir al miembro. Pero que lo orientó verbalmente. Véase: Transcripción de Vista, íd, pág. 48. También testificó en cuanto a la orientación que le brindó al señor, y señaló que no le fue dado ningún documento en cuanto a esta determinación. Véase: Transcripción de Vista, íd, pág. 44.

La notificación acerca de la determinación debía contener las razones y fundamentos que utilizó la agencia para denegarle la vivienda pública al solicitante. La recurrida alega que estas obligaciones de la agencia no se activaron ante la falta de un procedimiento formal de solicitud de vivienda. No estamos de acuerdo. La realidad es que el señor Molina Figueroa realizó una solicitud.

Además, la parte recurrida alega que no solicitó ocupación continuada y de haberlo hecho no hubiese resultado elegible. Sin embargo, consideramos que el que no hubiese resultado elegible no es razón para que no sea acreedor de un proceso que constara de las debidas notificaciones y oportunidad de ser escuchado.

El no haber entregado el certificado de antecedentes penales, como se arguye, no debe ser motivo para que se entienda que no es un solicitante. El proceso de solicitud que establece el Art. VI del Reglamento dispone que una vez radicada la solicitud, la administración le requerirá al solicitante una serie de documentos. Es por esto que se debe considerar como solicitante aun cuando no se hayan entregado todos los documentos. La entrega de éstos es parte del proceso, pero la falta de entrega no convierte a la persona en un no solicitante.

El no cumplir con uno de los requisitos sí podría ser razón para denegar una solicitud, pero no para negarle los más mínimos requisitos de debida notificación que requiere el propio reglamento de la agencia. Una persona debe ser debidamente notificada para que de esta manera proceda a remediar la razón. Aun cuando se considere que un derecho reclamado es improcedente, ello no es óbice para que no se le garantice los procedimientos establecidos en la reglamentación de la agencia.

Si una agencia a través de su reglamento establece unos términos para facilitar su proceso decisional y limitar el alcance de su discreción, es una obligación observar tales

términos. No queda a la discreción de la Administración el reconocer o no los derechos que ésta ha extendido en relación a los requisitos de selección, admisión y ocupación continua de los apartamentos que componen los residenciales públicos del país.

Las razones expresadas demuestran que no procedía el desahucio del señor Molina Figueroa. No debemos abstraernos de la realidad del peticionario, quien ha su avanzada edad sufre de una condición de ceguera y se le pretende desalojar del apartamento y comunidad donde ha residido toda su vida.

IV

Por los fundamentos antes expuestos, respetuosamente disiento del criterio mayoritario. En su lugar, revocaría el dictamen del Tribunal de Apelaciones, y en consecuencia, decretaría no ha lugar el desahucio del señor Molina Figueroa.

Luis F. Estrella Martínez
Juez Asociado