ARNALDO MORALES NARVÁEZ y GUILLERMO COTTO GUA-DALUPE, demandantes y recurridos, *v.* OFICINA DEL GOBERNADOR, demandada y recurrente.

*Número:* R-81-267 *Resuelto:* 12 de mayo de 1982

*Carmelo Guzmán Géigel, Julio Maymí Pagán* y *Guillermo Mojica Maldonado*, abogados de los demandantes-recurridos; *José Ramón Pérez Hernández*, abogado de la demandada-recurrente.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Arnaldo Morales Narváez se inició en el Servicio Público el 11 de agosto de 1964. Ocupó puestos en el Servicio Por Oposición tanto en el Fondo del Seguro del Estado como en el Departamento de Justicia. El 1ro de

febrero de 1974 fue trasladado y ascendido a la Oficina del entonces Gobernador Hon. Rafael Hernández Colón. Se desempeñó en el puesto de Auxiliar Administrativo I en la División de Coordinación de Programas de Gobierno, clasificado en el Servicio Exento.

El 7 de septiembre de 1977 fue cesanteado por un Ayudante Especial del Gobernador Hon. Carlos Romero Barceló aduciendo que la posición que ocupaba estaba incluida en el Servicio de Confianza, según el Art. 9, inciso 7 de la Ley de Personal, [1] y, por lo tanto, de libre remoción.

No conforme, apeló y solicitó su restitución ante la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) alegando ser empleado de carrera y que su cesantía fue nula por no habérsele formulado cargos, ni habérsele expuesto las razones ni haber sido informado de su derecho a apelar.

Guillermo Cotto Guadalupe comenzó su carrera en el Servicio Público el 1ro de octubre de 1962 como Oficinista Dactilógrafo I en el Departamento de Estado. A partir del 1ro de septiembre de 1972 se desempeñó como Auxiliar Fiscal II en la Comisión para Seguridad de Tránsito. Ambos puestos estaban clasificados en el Servicio Por Oposición. Mediante ascenso-traslado el 16 de marzo de 1973 pasó a ocupar la posición de Auxiliar Fiscal III —la cual posteriormente fue reclasificada como Auxiliar Administrativo III— en la Oficina del Gobernador, División de Servicios Gerenciales, puesto clasificado en el Servicio Exento. El día 22 de septiembre de 1977 fue separado del Servicio Público. Las razones para tal determinación fueron las mismas comunicadas a Morales Narváez. También apeló a la JASAP cuestionando la validez de tal actuación y alegando tener derecho a reinstalación por ser empleado de carrera.

Ambos casos fueron consolidados y resueltos en la JASAP a base de memorandos de Derecho. El organismo

---

[1] Ley Núm. 5 del 14 de octubre de 1975 (3 L.P.R.A. sec. 1421(7)).

revisor confirmó en todos sus extremos las actuaciones de la Oficina del Primer Ejecutivo al concluir que bajo la derogada Ley de Personal,[2] todo empleado regular (de carrera) que aceptaba un puesto comprendido en el Servicio Exento renunciaba expresamente a todos los derechos que le amparaban. Determinó que a los allí apelantes les aplicaba el Art. 9, inciso 7 del estatuto de personal vigente y por consiguiente la separación de los cargos estaba a la discreción de la autoridad nominadora.

Morales y Cotto acudieron al Tribunal Superior, Sala de San Juan, el cual resolvió que ambos tenían derecho a un debido proceso de ley donde se les brindara una vista con oportuna y adecuada notificación, derecho a ser oídos, enfrentarse a la prueba en su contra, presentar prueba y argumentos a su favor en virtud de los siguientes fundamentos: (1) que habían hecho del Servicio Público la vocación de sus vidas y ello les creaba una legítima expectativa a retener el empleo —*Reyes Coreano* v. *Director Ejecutivo*, 108 D.P.R. 781 (1979)—; (2) que como trabajaron en una agencia cubierta por la Ley de Personal —a pesar de caer bajo el alcance "expandido" del Servicio de Confianza— no cumplían ese tipo de función y les eran de aplicación los derechos básicos enmarcados en el principio de mérito, entre ellos el derecho a la retención del empleo; (3) a los empleados que comenzaron a trabajar en la Oficina del Primer Ejecutivo bajo las disposiciones de la derogada Ley de Personal les aplicaba el Art. 9, incisos 4 y 6; y (4) nunca renunciaron a sus derechos como empleados de carrera cuando fueron a ocupar posiciones en el Servicio Exento en la Oficina del Gobernador.

A solicitud del Primer Ejecutivo revisamos ese dictamen a la luz de los siguientes señalamientos de error: (1) conceder derechos y prerrogativas que la legislatura no contempló; (2) determinar que Cotto y Morales pasaron a

---

[2] Ley Núm. 345 de 12 de mayo de 1947.

ser empleados de carrera bajo la vigente legislación de personal; y (3) que no habían renunciado a sus derechos como empleados de carrera.

## II

 La Regla 9(a) del Reglamento de Personal, [3] vigente para la fecha de los cambios que originaron parte de esta controversia, requería autorización escrita del empleado para ser trasladado. En el caso de Morales Narváez, éste firmó el Informe de Cambio en el encasillado núm. 38 correspondiente a *traslado y cambio de puesto* dentro de los servicios *Por Oposición, Sin Oposición y Exento.* Ausentes otras circunstancias, estamos convencidos que medió la autorización necesaria. El tribunal aplicó la norma estricta sobre renuncia de derechos *constitucionales* —que requiere se haga voluntaria, con pleno conocimiento de causa, y sea expresa, no presunta. Mediante ese enfoque erró. El principio de mérito no es de rango constitucional, *Reyes Coreano* v. *Director Ejecutivo*, supra, sino de génesis estatutaria. Como tal son aplicables las normas esbozadas en *F.S.E.* v. *Comisión Industrial*, 105 D.P.R. 261 (1976), respecto a que las renuncias de tales derechos tan solo tienen que ser claras y conscientes. No abrigamos duda de que Morales Narváez entendió el alcance y las consecuencias de haber autorizado con su firma el cambio. Su experiencia en el servicio público y preparación académica así lo acreditaban.

Igual solución se impone en el caso de Cotto Guadalupe. Se nos ha demostrado que suscribió y firmó el original del documento denominado *Informe de Cambio*, a través del cual pasó a ocupar la posición en el Servicio Exento en la

---

[3] Traslado de empleados

"(a) Ningún empleado regular podrá ser trasladado de un puesto en el Servicio por Oposición a otro puesto en el Servicio sin Oposición o en el Servicio Exento, *a menos que exprese por escrito su conformidad".* (Énfasis suplido.) 3 R.&R.P.R. sec. 647-131.

Oficina del Gobernador. Al cumplirse con el requisito exigido por el Reglamento, también es forzoso concluir, sin margen de error, que medió afirmativamente tal renuncia y autorización. Adviértase que la importancia de la autorización precisamente radica en que tal cambio conlleva la renuncia "a gozar de las prerrogativas de seguridad de empleo reservadas únicamente a los empleados en el Servicio Por Oposición". Concluimos que Cotto Guadalupe perdió su carácter de empleado Por Oposición bajo el derogado estatuto de personal y no le es de aplicación la medida transitoria contemplada en la Sec. 9, inciso 1 de la actual Ley.

### III

■ Conforme nuestra decisión en *Díaz de Llovet* v. *Oficina del Gobernador*, 112 D.P.R. 747 (1982), a los empleados que ocuparon puestos clasificados en el Servicio Exento bajo la vigencia de la derogada Ley de Personal en la Oficina del Gobernador les es de aplicación el Art. 9, inciso 7 (3 L.P.R.A. sec. 1421(7)), y, por ende, pasaron a ocupar puestos en el Servicio de Confianza y como tales son de libre remoción.

Aclarado este extremo, concentremos nuestra atención en resolver qué derechos retiene, si alguno, un empleado que pasó del Servicio Por Oposición al Servicio Exento.

■ El estatuto actual contempla claramente que los empleados de confianza son de *libre* selección y *remoción*.[4] Sin embargo, el tribunal sentenciador estableció una distinción no visualizada en el estatuto al determinar que aquellos empleados en el Servicio de Confianza que no estuviesen cumpliendo con funciones atribuibles a esa clasificación tendrían derecho a la protección básica del sistema de mérito, consistente en el derecho a retener su

---

[4]3 L.P.R.A. sec. 1350. Véase *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923 (1974), resuelto bajo la vigencia de la Ley Núm. 345.

empleo. No podemos compartir ese razonamiento. No surge del historial legislativo ni de la Ley que esa fuera la intención del legislador. No se extiende ese tipo de protección o beneficios. En *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838, 852 (1978), dijimos que el empleado público tiene un reconocido interés en la retención de su empleo, si dicho interés está *protegido por ley o cuando las circunstancias crean expectativa de continuidad.* Ello no se vislumbra ni en la Ley (5) ni en las circunstancias específicas del caso de autos. La renuncia y el cambio de clasificación de Morales Narváez no contempló beneficio alguno a ser retenido o a retornar a un puesto igual al que había ocupado. *Lupiáñez* v. *Srio. de Instrucción,* 105 D.P.R. 696 (1977), es distinguible. Allí le *"ofrecieron* a la demandante una *posición permanente* . . . , ella ocuparía puestos provisionales como paso previo y rutinario mientras tanto se completara el trámite para la creación de aquella plaza regular. . .". (Énfasis suplido.) Pág. 697. A Morales Narváez no le fue hecho ofrecimiento de similar naturaleza como condición para que aceptara la posición de exento que desempeñó. A diferencia de *Lupiáñez,* a él no le prometieron otros incentivos que los dimanantes —con sus limitaciones— del puesto exento. No tenía "una legítima expectativa de que el puesto que desempeñaba se convertiría en permanente". Pág. 700.

Dijimos en *Pastor Lozada* v. *Director Ejecutivo,* 101 D.P.R. 923, 928–929 (1974), que el empleado que entra al Servicio Exento acepta las ventajas y desventajas que ello conlleva. La ventaja y atractivos para el incumbente son que no tiene que aprobar exámenes previos, no tiene que

---

(5) Recientemente el noveno circuito se expresó en *Bollow* v. *Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (1981), a los efectos de que un empleado no tiene un interés propietario protegido constitucionalmente cuando el estatuto permite a la autoridad nominadora separarlo de la posición a su entera discreción *(dismiss at pleasure).* El concepto de *interés propietario* rechaza la expectativa unilateral: *Perry* v. *Sindermann,* 408 U.S. 593, 601–602 (1972); *Board of Regents* v. *Roth,* 408 U.S. 564, 577 (1972).

ser confirmado por el Director de Personal, sus cargos generalmente están bien remunerados y los incumbentes tienen la satisfacción íntima de participar en mayor o menor grado en la formulación y ejecución de la política pública del Gobierno. Se expresó además que en estos cargos la vida oficial del incumbente es sumamente interesante, genera y recibe grandes satisfacciones espirituales. La desventaja estriba en que puede ser separado del cargo sin necesidad de explicación alguna.

■ *Reyes Coreano* v. *Director Ejecutivo*, supra, invocado por el tribunal a quo a los efectos de que Morales Narváez tenía una legítima expectativa de permanencia en la posición —pues había hecho del servicio público su vocación— no es aplicable. Hemos visto que él *renunció* expresamente a sus derechos como empleado de carrera al autorizar y aceptar el cambio. En ausencia de mandato legislativo u otras circunstancias particulares, el mero hecho de ocupar una posición por un prolongado período de tiempo no crea por sí solo un interés propietario cuando se acepta un puesto de confianza.

Por los fundamentos expuestos *se dictará sentencia en que se revoque la del Tribunal Superior a los fines de decretar válidas las cesantías de Morales Narváez y Cotto Guadalupe.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

La opinión de mayoría provee a idéntica situación a la que se refieren tanto la opinión del Tribunal como el disenso del suscribiente en *Díaz de Llovet* v. *Oficina del Gobernador*, 112 D.P.R. 747 (1982).

Ambos demandados, Morales y Cotto, el primero con *16* años en el servicio público y el segundo con *20* fueron separados sin vista ni justificación, e inexplicablemente la

mayoría descubre que ni siquiera tenían *expectativa de continuidad* en el quehacer que había ocupado el mejor tercio de su existencia.

La razón de decidir no es correcta. El expediente muestra que en reconocimiento a su idoneidad, Morales fue ascendido en 1974 nombrándosele Auxiliar Administrativo I en la Oficina del entonces Gobernador señor Hernández Colón, clasificado en el Servicio Exento. Cotto fue nombrado en 1973 también por ascenso, para una plaza en la misma Oficina del Gobernador que se clasificó como Auxiliar Administrativo III. Por Reglamento aprobado por el Gobernador en virtud de facultad expresamente concedida por Ley Núm. 324 de 13 mayo, 1949(¹) que a ese efecto *adicionó* el inciso 26 a la anterior Ley de Personal (Núm. 345 de 12 mayo, 1947), la Oficina del Primer Ejecutivo —la más sensitiva a la discrepancia ideológica del personal— convirtióse en agencia en su totalidad comprendida en el *Servicio Exento.* Sobre la suerte de estos empleados públicos al cambiar la Ley de Personal ordenó la nueva Ley (Núm. 5 de 14 octubre, 1975) en el Núm. 6 de su Art. 9:

> Los empleados que a la vigencia de esta ley estuvieren ocupando puestos en agencias, o subdivisiones de éstas que en su totalidad están comprendidas en el Servicio Exento a virtud de las disposiciones de la Ley núm. 345 de 12 de mayo de 1947, según enmendada, o de leyes especiales, las cuales pasen a ser Administradores Individuales a virtud de las disposiciones de la sec. 1343 de este título, serán empleados de carrera o de confianza conforme a los criterios establecidos en las secs. 1350, 1351 y 1352 de este título.

Como dispone este inciso 6 en su parte final, los recurridos Morales y Cotto deben clasificarse como de

---

(¹) Sec. 8, inciso 26. "Se faculta al Gobernador para que, *en los casos en que él estime necesario para el buen funcionamiento de su oficina,* de la Mansión Ejecutiva y del Negociado de Presupuesto, incluya uno o más funcionarios o empleados de esas Oficinas en el Servicio Exento o en el Servicio sin Oposición." (Énfasis nuestro.) 3 L.P.R.A. sec. 648.

carrera o de confianza según los criterios que establece la Ley en sus Arts. 5.10, 5.11 y 5.12 (3 L.P.R.A. secs. 1350, 1351 y 1352) y son de particular aplicación al presente caso el Núm. 1 del Art. 5.10 que define como de confianza los ayudantes ejecutivos y administrativos nombrados por el Gobernador "que le respondan directamente"; y el Art. 5.12 que clasifica los demás como empleados de carrera.

Al igual que en *Díaz de Llovet,* ante, carecemos de hechos determinados sobre los cuales resolver. A la luz de la condición de empleados en el *Servicio Exento* de estos recurridos y del Núm. 6 del Art. 9 de la Ley de Personal, 3 L.P.R.A. sec. 1421(6), antes de que podamos decidir si son empleados de confianza de libre selección y remoción, instancia debe llamar a vista y hacer determinaciones de hecho sobre los aspectos aquí señalados y llegar a sus propias conclusiones respecto a la condición de carrera o de confianza en estos auxiliares administrativos.

Remitiría el caso a instancia a los efectos señalados.