Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JULIO GUTIÉRREZ LACAYO<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO DE MAUNABO<br><br>Recurrente | TA2025RA00050 | *Revisión* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.: 2004-03-1121<br><br>Sobre: Reclutamiento y Selección |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de agosto de 2025.

Comparece el Municipio de Maunabo (en adelante, Municipio y/o parte recurrente) mediante un *Recurso de Revisión Judicial* para solicitarnos la revisión de la *Resolución* emitida y notificada el 3 de junio de 2025, por la Comisión Apelativa del Servicio Público (en adelante CASP).[1] Mediante la *Resolución* recurrida, la CASP declaró *Ha Lugar* una apelación incoada por Julio Gutiérrez Lacayo (en adelante, señor Gutiérrez Lacayo y/o recurrido).

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

I

De lo que se desprende de los autos, el señor Gutiérrez Lacayo trabajó para el Municipio de Maunabo como guardia de seguridad en el complejo turístico Mauna Caribe por espacio de doce (12) años. El 1 de marzo de 2004, el primer mandatario del Municipio, el Honorable Jorge L. Márquez Pérez (Alcalde), le envió una misiva al recurrido, mediante la cual le expresó que no le extendería un nuevo

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 5, Anejo 2, págs. 148-150.

contrato de trabajo.[2] En la antedicha carta, el Alcalde le informó que la determinación obedecía a que, de un examen de su expediente de trabajo, se desprendía una conducta reiterada de incumplimiento con sus obligaciones. Específicamente, destacó tres (3) ausencias del recurrido durante el año 2002, y el no haber regresado a trabajar el 2 de febrero de 2004, luego de agotar vacaciones, por haber estado detenido en una institución penal.

En desacuerdo con la misiva recibida, el 30 de marzo de 2004, el señor Gutiérrez Lacayo incoó un *Escrito de apelación* ante la Junta de Apelaciones del Sistema de Administración de personal (JASAP).[3] Adujo que desde que inició sus labores en Mauna Caribe hacía doce (12) años, le habían renovado todos sus contratos consecutivamente hasta que fue despedido. Arguyó que dicho despido ocurrió de forma injustificada e ilegalmente. Peticionó que se revocara la determinación emitida en su contra y, en su lugar, se ordenara una vista y/o el remedio que procediera en derecho.

En reacción, el 5 de mayo de 2004, el Municipio de Maunabo presentó una *Contestación a escrito de apelación.*[4] En su escrito, admitió algunas alegaciones y negó otras. Esbozó que no era cierto que el recurrido hubiese sido despedido caprichosamente. Como parte de sus defensas afirmativas, acotó que el recurrido tenía un amplio historial de incumplimiento de sus obligaciones y que la determinación realizada en su contra fue realizada cónsono al marco legal aplicable.

En este punto, conviene mencionar que, una mirada al expediente administrativo del presente caso revela que el mismo se mantuvo en un limbo procesal por poco menos de veinte (20) años, el cual resumimos, en la espera de la celebración de la

---

[2] SUMAC TA, a la Entrada Núm. 5, Anejo 6, págs. 1-2.
[3] *Íd.*, Anejo 3, págs. 1-3.
[4] *Íd.*, Anejo 4, págs. 1-2.

correspondiente vista pública. Ahora bien, aunque, para el año 2019, hubo algún movimiento en el caso, los trámites conducentes a la celebración de la correspondiente vista, nuevamente quedaron inertes, tras la CASP conceder una multiplicidad de prórrogas y emitir varias órdenes para mostrar causa, entre otras concesiones, sin consecuencias para ninguna de las partes.[5] Tanto así, que aun cuando se desprende se presentó un informe de conferencia con antelación a vista pública, la CASP se vio forzada a solicitarle a las partes a someter un segundo informe. Lo anterior puesto a que el primero se había presentado poco más de diez (10) años antes, por lo que hacía falta actualizar la información.[6]

Así las cosas, el 28 de marzo de 2023, las partes presentaron el referido *Informe de conferencia con antelación a la vista pública.*[7]

En respuesta, y luego de varios trámites de rigor incluyendo, pero no limitándose, a múltiples suspensiones y transferencias de vista,[8] finalmente, el 10 de octubre de 2024, la Lcda. Maribel Rodríguez Ramos, Comisionada Asociada de la CASP, actuando como Oficial Examinadora (Licenciada Rodríguez Ramos), celebró una vista en su fondo.[9]

La prueba testifical recibida por parte del Municipio de Maunabo consistió en el testimonio de Ilia M. Pedroza Camacho y Rogelio Rosario Villodas. Por su parte, la prueba testifical recibida por parte del recurrido consistió en el testimonio del propio recurrido. Según se desprende de los autos, todos los testigos fueron interrogados y contrainterrogados.

Con relación a la prueba documental, el CASP recibió tres (3) documentos: (i) Exhibit 1 por estipulación de las partes, el cual consistió en una carta fechada del 1 de marzo de 2004, dirigida al

---

[5] SUMAC TA, a la Entrada Núm. 5, Anejo 2, págs. 15-98.
[6] *Íd.*, Anejo 2, págs. 21-24 y 80, respectivamente.
[7] *Íd.*, Anejo 3, págs. 63-77.
[8] *Íd.*, Anejo 2, págs. 99-101, 105-107, 116-117 y 121-122, respectivamente.
[9] *Íd.*, Anejo 2, págs. 139-141.

recurrido y suscrita por el Alcalde;[10] (ii) Exhibit 1 del Municipio de Maunabo, el cual consistió en una copia de entradas del libro de novedades sobre turnos en el complejo turístico Mauna Caribe;[11] y (iii) Exhibit 1 del recurrido, el cual consistió en una carta fechada del 11 de febrero de 2004, dirigida al recurrido y suscrita por el señor Luis Lafuente, Ayudante Administrativo.[12]

Concluido el desfile de la prueba, las partes presentaron sus respectivas argumentaciones finales y el caso quedó sometido para ser adjudicado.

Producto de la vista, se emitió el *Informe de la Oficial Examinadora* (Informe).[13] En su *Informe*, recomendó a la CASP que declarara *Ha Lugar* la apelación interpuesta.

Como parte del *Informe* rendido, se emitieron las siguientes nueve (9) determinaciones de hechos:

1. El PROMOVENTE trabajó en el Municipio de Maunabo por 12 años, en donde ocupó un puesto de carácter transitorio de Guardia de Seguridad, en el complejo turístico Mauna Caribe. Dicho nombramiento vencía anualmente.

2. El PROMOVENTE fue nombrado en el puesto de Guardia de Seguridad, con carácter transitorio, en el año 1991.

3. Desde que el PROMOVENTE fue nombrado en el puesto de Guardia de Seguridad, con carácter transitorio, en el 1991, laboró en el Municipio de Maunabo por 12 años consecutivos, sin que se le notificara la extensión o cancelación de dicho nombramiento.

4. El 11 de febrero de 200[4], el PROMOVENTE recibió una carta, suscrita por el Sr. Luis Lafuente, Ayudante Administrativo. El señor Lafuente le informó al PRMOVENTE que recibió un comunicado de su supervisor indicando que se había estado ausentando sin justificación desde el 2 de febrero de 2004. Además, le convocó a una reunión para el 17 de febrero de 2004, en la Oficina de Recursos Humanos, en la que podía presentar evidencia documental y testifical que considerara necesaria para su caso, ya que se le daría la oportunidad para la discusión plena del asunto.

5. El 1 de marzo de 2004, el PROMOVENTE recibió una carta suscrita por el Alcalde, Hon. Jorge L. Márquez Pérez, en la que le informó que recientemente su supervisor inmediato presentó una querella ante la Oficina de Recursos Humanos donde se le imputaba una conducta reiterada de ausentismo

---

[10] SUMAC TA, a la Entrada Núm. 5, Anejo 6, págs. 1-2.
[11] *Íd.*, págs. 3-6.
[12] *Íd.*, pág. 7.
[13] *Íd.*, Anejo 2, págs. 151-174.

sin excusas válidas. Por ello fue citado y compareció a una vista informal sobre el asunto, acompañado de su abogado.

6. En la carta del 1 de marzo de 2004, se le indicó al PROMOVENTE que, conforme a su expediente este había ocupado un puesto transitorio como Guardia de Seguridad en el complejo turístico Mauna Caribe y que su último contrato venció el 31 de diciembre de 2003, el cual no fue renovado.

7. La carta del 1 de marzo de 2004[,] señaló que el PROMOVENTE no asistió al trabajo los días 3 de mayo de 2002, 9 de mayo de 2002 y 19 de julio de 2002, al turno de las 11:00 p.m., obligando al guardia del turno anterior a realizar la labor que le correspondía a este. Además, que el 2 de febrero de 2004, se suponía que el PROMOVENTE regresara a su trabajo después de agotar vacaciones y no lo hizo porque estaba detenido en una institución penal, por desacato al Tribunal.

8. La carta del 1 de marzo de 2004[,] señaló que un examen del expediente del PROMOVENTE reveló una la (sic) conducta reiterada de incumplimiento de este con sus obligaciones y que ello los obligaba a no extenderle un nuevo contrato de trabajo.

9. En la carta del 1 de marzo de 2004, se le apercibió al PROMOVENTE que de no estar de acuerdo con dicha determinación tenía derecho a apelar la misma en 30 días a partir del recibo de esta ante la JASAP.[14]

Por otro lado, como parte del referido *Informe,* la licenciada Rodríguez Ramos consignó sus conclusiones de derecho. Allí, concluyó que estando vigente el nombramiento transitorio del señor Gutiérrez Lacayo, el Municipio no cumplió con el proceso establecido para dejar sin efecto el mismo. Expresó que dicho nombramiento estaba vigente al 1 de marzo de 2004, cuando el Municipio dispuso dejarlo sin efecto antes de la fecha de su vencimiento, o sea, antes del 31 de diciembre de 2004. De ahí, coligió que el recurrido tenía una expectativa de continuidad en su empleo transitorio hasta el 31 de diciembre de 2004.

De otra parte, razonó que el Municipio tenía la obligación de cumplir con el debido proceso de ley a los fines de la imposición de la medida que se proponía aplicar. A tenor, estableció que el nombramiento estaba vigente y no había sido cancelado previamente, por lo que la carga probatoria requerida para cancelar

---

[14] SUMAC TA, a la Entrada Núm. 5, Anejo 2, págs. 159-161. (Notas al calce omitidas).

el nombramiento era una prueba clara, robusta y convincente, cosa que no ocurrió. Resaltó que, en la carta del 1 de marzo de 2004, únicamente, se expresaba que, dada la conducta reiterada de incumplir sus obligaciones, estaban obligados a no extender al recurrido un nuevo contrato de trabajo, por lo que así lo decretaban. Asimismo, apuntó que el Municipio tenía que garantizar el debido proceso de ley al recurrido, lo que requería una adecuada notificación de la formulación de cargos en su contra, con las advertencias sobre las sanciones a las que se exponía como resultado del proceso.

Producto del antedicho *Informe*, la licenciada Rodríguez Ramos recomendó que se le ordenara al Municipio a pagar al señor Gutiérrez Lacayo los salarios y beneficios marginales dejados de percibir desde la fecha en que se dejó sin efecto el nombramiento transitorio hasta la fecha de vencimiento de este. Entiéndase, desde el 1 de marzo de 2004 hasta el 31 de diciembre de 2004. Además, sugirió que, el salario neto del señor Gutiérrez Lacayo correspondiente a dicho periodo debía computarse de acuerdo con lo establecido en *Zambrana García v. ELA*.[15]

Recibido el Informe, el 3 de junio de 2025, la CASP emitió y notificó la *Resolución* objeto de revisión.[16] Mediante esta *Resolución*, la CASP adoptó el Informe y lo hizo formar parte de su dictamen. A tenor, declaró *Ha Lugar* la apelación interpuesta por el recurrido y ordenó a la parte recurrente a: (i) pagarle al recurrido los salarios y beneficios marginales dejados de percibir desde la fecha en que se dejó sin efecto el nombramiento transitorio hasta la fecha de vencimiento de este, entiéndase, desde el 1 de marzo de 2004, hasta el 31 de diciembre de 2004, y (ii) computar el salario neto del

---

[15] *Zambrana García v. ELA et al.,* 204 DPR 328 (2020).
[16] SUMAC TA, a la Entrada Núm. 5, Anejo 2, págs. 148-150.

recurrido correspondiente a dicho periodo de acuerdo a lo establecido en el caso *Zambrana García v. ELA*.[17]

En desacuerdo, el 3 de julio de 2025, el Municipio de Maunabo compareció ante esta Curia mediante un *Escrito de Revisión,* en el cual alzó los siguientes tres (3) señalamientos de error:

i. Erró la Honorable Comisión Apelativa de Servicio Público al no desestimar el recurso apelativo por falta de jurisdicción sobre la materia.

ii. Erró la Honorable Comisión Apelativa de Servicio Público al determinar que el señor Gutiérrez Lacayo albergaba una expectativa de continuidad a que su contrato le fue extendido basado en que el Municipio no le notificó su cancelación y el hecho de que le fueran renovado[s] los contratos anuales automáticamente por doce años consecutivos.

iii. Erró la Honorable Comisión Apelativa de Servicio Público al determinar que el nombramiento de empleo transitorio de la parte recurrida continuaba en vigor a la fecha de 1 de marzo de 2024.

Mediante *Resolución,* emitida el 9 de julio de 2025, concedimos a la parte recurrente hasta el 16 de julio de 2025, para que acreditara el cumplimiento con la Regla 58 del Reglamento del Tribunal de Apelaciones.[18] Igual término fue concedido a la CASP, para que presentara copia certificada del expediente administrativo relacionado al caso del título.

El 16 de julio de 2025, compareció la parte recurrente para acreditar el cumplimiento con nuestra *Resolución* del 9 de julio de 2025. Por otro lado, el 22 de julio de 2025, compareció la CASP para presentar el expediente administrativo, según requerido. Por su parte, el 21 de agosto de 2025, la parte recurrida presentó su oposición al recurso de revisión. Con el beneficio de la comparecencia de ambas partes, procederemos a disponer del recurso ante nos.

---

[17] *Zambrana García v. ELA et al.,* supra.
[18] In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, págs. 76-77 215 DPR __ (2025).

## II

### A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[19] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[20] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[21] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[22] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[23] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[24] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[25]

---

[19] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[20] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[21] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[22] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[23] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[24] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).
[25] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[26] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[27] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[28] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[29] En cuanto a la evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[30] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[31] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[32] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[33]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo

---

[26] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[27] *Íd.*
[28] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[29] *Otero v. Toyota*, 163 DPR 716, 727 (2005).
[30] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota,* supra, a la pág. 728.
[31] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[32] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[33] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.

descansar en meras alegaciones.[34] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[35] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[36] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[37] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[38] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[39]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[40] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[41] Ahora bien, la deferencia reconocida a las decisiones de

---

[34] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[35] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[36] *Otero v. Toyota*, supra, a la pág. 728.
[37] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[38] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[39] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[40] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).
[41] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[42] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automática, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[43]

### B. Competencia de la Junta de Apelaciones del Sistema de Administración Personal

Mediante la hoy derogada Ley de Personal del Servicio Público de Puerto Rico (Ley Núm. 5)[44] se creó la Junta de Apelaciones del Sistema de Administración Personal (JASAP.) a la cual se le concedió competencia apelativa sobre las acciones y/o decisiones tomadas en ciertos casos y por personas en específico de: (i) la Oficina Central del de Asesoramiento Laboral y de Administración de Recursos Humanos; (ii) los Administradores Individuales que desglosa el referido estatuto, y (iii) las autoridades nominadoras.[45] Particularmente, el Artículo 7.14 de la aludida ley enumera las personas que pueden acudir a la JASAP para que esta ejerza sus facultades apelativas.[46] Así, pues, el auxilio de la referida agencia puede solicitarse:

(1) En casos de destitución o suspensión de empleo y sueldo por un empleado de carrera que esté dentro del Sistema de Personal, o cuando alegue que una acción o decisión que le afecta viola cualquier derecho que se le conceda a virtud de las disposiciones de esta ley, del reglamento que se apruebe para instrumentar esta ley, o de los

---

[42] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

[43] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR __ (2024).

[44] Ley Núm. 5 de 14 de octubre de 1975, 3 LPRA sec. 1301 *et seq.* (derogada).

[45] *Íd.,* Artículo 7.14, 3 LPRA sec. 1394.

[46] Artículo 7.14 de la Ley Núm. 5, *supra* (derogado).

reglamentos adoptados por los Administradores Individuales para dar cumplimiento a esta ley. Las acciones que interpongan los empleados y que estén relacionadas con las áreas esenciales al principio de mérito, según señaladas en la Sección 4.1 del Artículo 4 de esta ley, serán vistas en primera instancia por la Junta.

(2) Por un ciudadano, cuando alegue que una acción o decisión que le afecta viola su derecho a entrar en el Sistema de Administración de Personal en cumplimiento con el principio de mérito. (3) Por los Administradores Individuales, cuando aleguen que una acción o decisión de la Oficina Central viola las disposiciones generales en esta ley en las áreas esenciales del principio de mérito, o el reglamento establecido por la Oficina para instrumentar esta ley. (4) Por cualquier agencia, en relación con determinaciones de la Oficina sobre la aprobación de puestos de confianza.

(3) Por los Administradores Individuales, cuando aleguen que una acción o decisión de la Oficina Central viola las disposiciones generales en esta ley en las áreas esenciales del principio de mérito, o el reglamento establecido por la Oficina para instrumentar esta ley.

(4) Por cualquier agencia, en relación con determinaciones de la Oficina sobre la aprobación de puestos de confianza.[47]

Ahora bien, al promulgarse la igualmente derogada Ley de Municipios Autónomos de Puerto Rico (Ley de Municipios Autónomos),[48] se excluyó a los municipios de la aplicación de las disposiciones de la antes mencionada Ley Núm. 5.[49] Empero, excepto en cuanto a los artículos relacionados a la JASAP., como lo es el señalado Artículo 7.14.,[50] los cuales continuarían aplicando a los municipios.[51]

Es menester reseñar, que luego de la aprobación de varios estatutos, los cuales crearon otras agencias con facultades similares a la JASAP, esta última desapareció.[52] Finalmente, mediante el Plan de Reorganización de la Comisión Apelativa del Servicio Público se creó la Comisión Apelativa de Servicio Público (CASP), la cual es una

---

[47] Artículo 7.14 de la Ley Núm. 5, *supra* (derogado).
[48] Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 nota *et seq.* (Edición de 2014) (derogada).
[49] *Íd.*, Artículo 11.028 21 LPRA sec. 4577(derogado).
[50] Artículo 7.14 de la Ley Núm. 5, *supra* (derogado).
[51] Artículo 11.028 de la Ley Núm. 81, *supra* (derogado).
[52] Véase Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184-2004, 3 LPRA sec. 1461 nota *et seq.* (Edición de 2011) (derogada).

fusión de dos (2) agencias, y a la cual se le delegaron los asuntos que era competencia de la JASAP[53]

Por último, en lo pertinente al caso de marras, precisa destacar que nuestro Tribunal Supremo tuvo ante sí una controversia similar a la que se plantea en estos casos, respecto a si la JASAP tenía jurisdicción para entender en casos de empleados transitorios. Sobre este particular, el Alto Foro razonó que no existía razón lógica para impedir que la referida instancia resuelva controversias relacionadas a despidos en que estén envueltos empleados transitorios.[54] Esto, puesto a que "[d]icho organismo administrativo tiene un conocimiento especializado (expertise) que hace sumamente conveniente el que sea éste el que en primera instancia entienda en dichos casos".[55] Además, el referido foro expresó que "con esta clase de situaciones el objetivo debe ser siempre el de proveerle al servidor público un mecanismo rápido mediante el cual éste pueda resolver sus discrepancias con la agencia sin necesidad de elevar inmediatamente los procedimientos ante un tribunal, sujeto a las formalidades y trámites procesales y gastos que ello conlleva".[56]

### C. El Empleo Transitorio Conforme a la Ley de Municipios Autónomos

Conforme dispone la hoy derogada Ley de Municipios Autónomos, el servicio público municipal se compone del servicio de carrera, el servicio de confianza y el servicio irregular.[57] Ahora bien, el referido cuerpo normativo estable que, también, pueden realizarse nombramientos transitorios.[58] Los empleados transitorios son definidos por la aludida ley como "aquellos que ocupan puestos de

---

[53] Véase, Plan de Reorganización de la Comisión Apelativa del Servicio Público, 3A LPRA Ap. XIII, Artículo 1 *et seq.*
[54] *Delgado v. D.S.C.A.,* 114 DPR 177, 183 (1983).
[55] *Delgado v. D.S.C.A.,* supra, a la pág. 183.
[56] *Íd.*
[57] Artículo 11.003 de la Ley Núm. 81, *supra,* 21 LPRA sec. 4553 (derogado).
[58] *Íd.,* Artículo 11.003 (c).

duración fija en el servicio de carrera, creados en armonía con esta ley".[59] No obstante, lo anterior, "[l]os empleados con nombramientos transitorios no se considerarán empleados de carrera, así como tampoco se podrán nombrar en puestos de carrera o con estatus probatorio o regular, a menos que pase por los procedimientos de reclutamiento y selección que dispone [la referida] Ley para el servicio de carrera".[60]

Por otra parte, precisa destacar que un nombramiento transitorio no puede exceder los doce (12) meses, con excepción de "las personas nombradas para sustituir empleados de carrera en licencia con o sin sueldo, sujeto a la condición presupuestaria del municipio o en proyectos especiales de duración determinada, sufragados con fondos federales o estatales, o programas sujetos a la disponibilidad de fondos".[61]

En lo referente al empleo transitorio, nuestro Tribunal Supremo ha expresado que el que ostenta un nombramiento solo tiene una expectativa de continuidad en el empleo durante el término de su nombramiento, exceptuando los casos en que se le ha creado al empleado una expectativa más allá del término.[62] En otras palabras, un empleado transitorio no goza de derecho a permanencia en su puesto, como tampoco tiene expectativa de retención en el mismo una vez venza su nombramiento.[63] Siendo así, es solo durante el término de su nombramiento que el empleado transitorio tiene la protección de la Ley Personal del Servicio Público y de la leyes y reglamentos municipales aplicables.[64] Igualmente, nuestro Alto Foro ha razonado que, el mero hecho de ocupar una posición transitoria por un prolongado periodo de tiempo no crea

---

[59] Artículo 11.003(c) de la Ley Núm. 81, *supra* (derogado).
[60] *Íd.* Artículo 11.004 (c), 21 LPRA sec. 4554 (derogado).
[61] *Íd.*
[62] *Orta v. Padilla,* 131 DPR 227, 243 (1992).
[63] *Depto. Recs. Naturales v. Correa,* 118 DPR 689 697 (1987).
[64] *Orta v. Padilla,* supra, a la pág. 243.

por sí solo un interés propietario.[65] Ahora bien, cuando el empleado transitorio es cesanteado durante la duración de su nombramiento, la autoridad nominadora viene obligada a seguir los procedimientos correspondientes.[66]

### D. Acciones Disciplinarias a Empleados Bajo la Ley de Municipios Autónomo

La hoy derogada Ley de Municipios Autónomos confiere a la autoridad nominadora la facultad de imponer las acciones disciplinarias que correspondan cuando la conducta de un empleado no se ajuste a las normas establecidas.[67] Entre las medidas que puede considerar la autoridad nominadora se encuentra la destitución.[68] Ahora bien, la destitución deberá ser por justa causa, previa formulación de cargos por escrito y advertencia a una vista informal, en la cual el empleado podrá explicar su versión de los hechos.[69] El antedicho cuerpo normativo requiere que la formulación de cargos sea notificada "con una relación de los hechos que sostienen la acción disciplinaria y de las leyes, ordenanzas, reglas o normas que han sido violadas por el empleado".[70]

En lo pertinente al presente caso, es menester acentuar, que pese a que la ausencia injustificada y sin autorización puede ser motivo para destitución, esta tendrá que ser por cinco (5) días consecutivos.[71]

Una vez se cumpla con el antes señalado procedimiento, es el alcalde o presidente de la legislatura, en caso de empleados de esta, quien determinará la acción final que corresponda y la notificará al empleado.[72] Si la decisión fuera destituir al empleado, se le advertirá

---

[65] *Morales Narváez v. Gobernador*, 112 DPR 761, 768 (1982).
[66] *S.L.G. Giovanetti v. E.L.A.*, 161 DPR 492, 510- 511 (2004).
[67] Artículo 11.012 de la Ley Núm. 81, *supra*, 21 LPRA sec. 4562 (derogado).
[68] *Íd.*
[69] Artículo 11.012 (a) y (b) de la Ley Núm. 81, *supra* (derogado).
[70] *Íd.*, Artículo 11.012 (b).
[71] Artículo 11.012 (d) de la Ley Núm. 81, *supra* (derogado).
[72] *Íd.*, Artículo 11.012 (c).

de su derecho de apelación ante la JASAP, dentro del término de treinta (30) días, contados a partir de la fecha de recibo de la notificación.[73]

### III

En el presente caso, el Municipio de Maunabo nos invita a concluir en su *primer* señalamiento de error que la CASP incidió al no desestimar la acción del título por falta de jurisdicción sobre la materia. Por otro lado, aduce, en su *segundo* y *tercer* señalamiento de error, que la CASP falló al determinar que el señor Gutiérrez Lacayo albergaba una expectativa de continuar en su empleo, y al concluir que el nombramiento transitorio de este continuaba en vigor a la fecha de 1 de marzo de 2004. Siendo lo planteado en el *primer* error un asunto jurisdiccional, según nos requiere el ordenamiento jurídico vigente, lo atenderemos de manera preferente sobre el resto de los errores.

El Municipio de Maunabo arguye, en cuanto a la falta de jurisdicción, que, dado a que el nombramiento del señor Gutiérrez Lacayo era uno transitorio, la CASP no tenía competencia para atender su reclamo. Según ya explicamos en nuestra exposición doctrinal previa, nuestro Alto Foro ya tuvo ante sí una controversia similar a la planteada por el Municipio, en esa ocasión, razonó que la referida agencia tenía jurisdicción para entender en casos de empleados transitorios, y que no existía lógica para impedirlo.[74] Más aun cuando, "[d]icho organismo administrativo tiene un conocimiento especializado (expertise) que hace sumamente conveniente el que sea éste el que en primera instancia entienda en dichos casos".[75] Por ende, este Panel coincide que la CASP tenía

---

[73] Artículo 11.012 (c) de la Ley Núm. 81, *supra* (derogado).
[74] *Delgado v. D.S.C.A.,* supra, a la pág. 183.
[75] *Íd.*

jurisdicción para atender el reclamo del señor Gutiérrez Lacayo. Siendo así, el *primer* error esgrimido por el Municipio *no se cometió*.

Establecido lo anterior, procedemos a disponer del resto de los errores planteados por el Municipio de Maunabo. La discusión de estos errores se realizará de manera conjunta, por estar ambos íntimamente relacionados.

Conforme relatamos previamente, el **1 de marzo de 2004**, luego de haber laborado como guardia de seguridad para el Municipio de Maunabo, por alrededor de doce (12) años, el señor Gutiérrez Lacayo recibió una carta del Alcalde de dicho municipio, en la cual le informó que **no le extendería un nuevo contrato de trabajo**. Inconforme, acudió ante JASAP, hoy CASP, mediante un *Escrito de Apelación*, en el cual alegó que el referido despido había sido injustificado e ilegal. En respuesta, el Municipio de Maunabo presentó una *Contestación al escrito de Apelación* en la cual insistió en que la terminación realizada fue en acorde al marco legal aplicable.

Según adelantamos, luego de que las partes del título presentaron sus posiciones iniciales, el caso estuvo trabado injustificadamente por la CASP, quien hizo concesiones ilimitadas, provocando así una inercia procesal cuestionable. Dicho lo anterior, y muy a nuestro pesar, puntualizamos que, no fue hasta el 2024, es decir, a casi dos (2) décadas de haberse presentado la apelación por el señor Gutiérrez Lacayo, que finalmente se celebró la vista en su fondo y se adjudicó el caso.

Así, pues, evaluada tanto la prueba testimonial como documental presentada por las partes del título, se emitió la *Resolución* que nos ocupa. En esta, la CASP concluyó que el nombramiento transitorio continuaba en vigor a la fecha del 1 de marzo de 2004, de manera que, para poderlo cesantear, el Municipio de Maunabo debía seguir el procedimiento correspondiente, lo cual

es claro que no ocurrió. En consecuencia, declaró *Ha Lugar* la apelación presentada por el señor Gutiérrez Lacayo, y ordenó al Municipio a pagar los salarios y beneficios marginales dejados de percibir por este desde la fecha en que se dejó sin efecto el nombramiento transitorio hasta la fecha de vencimiento de este. Es decir, desde el 1 de marzo de 2004 hasta el 31 de diciembre de 2004.

En desacuerdo, el Municipio acudió ante este foro revisor mediante un recurso de revisión judicial. En su escrito, insistió en que la CASP falló al disponer que el nombramiento del recurrido continuaba en vigor a la fecha del 1 de marzo de 2004. Ello, puesto a que, de la **carta suscrita el 1 de marzo de 2004**, mediante la cual el señor Gutiérrez Lacayo fue cesanteado, se desprende que su contrato venció el 31 de diciembre de 2003. Por ende, arguye que cuando se le informó al recurrido que no se le extendería un nuevo contrato, este ya no era empleado del Municipio, como tampoco tenía una expectativa de continuidad en el puesto. De forma que, el Municipio estaba facultado para prescindir de sus servicios en cualquier momento, sin tener que justificarse o seguir procedimiento alguno. No estamos de acuerdo con la postura del Municipio. Nos explicamos.

Conforme a la hoy derogada Ley de Municipios Autónomos, un empleado transitorio es aquel que ocupa un puesto de duración fija en el servicio de carrera,[76] cuyo nombramiento no puede exceder de doce (12) meses, con ciertas excepciones establecidas por la ley.[77] Precisa destacar que nuestro Tribunal Supremo ha razonado que el empleado con nombramiento transitorio **no puede tener una expectativa de continuidad en el empleo más allá del término de su nombramiento**.[78] Ahora bien, el Alto Foro hizo la salvedad de

---

[76] Artículo 11.003 (c) de la Ley Núm. 81, *supra*, (derogado).
[77] *Íd.*, Artículo 11.004 (c) (derogado).
[78] *Orta v. Padilla,* supra, a la pág. 243.

que hay excepciones a esta regla general, particularmente, cuando se le ha creado al empleado una expectativa de continuidad.[79] Aunque estamos conscientes de que el mero hecho de ocupar una posición transitoria por un prolongado periodo de tiempo no crea una exceptiva de continuidad,[80] a la luz de la totalidad de los autos ante nuestra consideración y en el espacio temporal evidente y que se desprende de las propias determinaciones de hecho y conclusiones de derecho emitidas por la CASP, coincidimos en que el Municipio le creó una expectativa al señor Gutiérrez Lacayo de que continuaría en su empleo, más allá del 31 de diciembre de 2003. Como indicamos, llegamos a esta conclusión, luego de evaluar detenidamente la totalidad de los autos, así como a lo atestiguado por el señor Gutiérrez Lacayo en la vista en su fondo, según surge del *Informe de la Oficial Examinadora.* Conviene mencionar que el referido relato no fue refutado por el Municipio. Precisa señalar que la única prueba presentada por el Municipio de Maunabo fue: (i) el testimonio oral de Ilia Pedroza Camacho (señora Pedroza Camacho), actual Directora de Recursos Humanos, quien expresó que nunca vio el expediente del recurrido puesto a que no existe, dado a que presuntamente desapareció en el huracán María;[81] (ii) el testimonio oral de Rogelio Rosario Villodas, empleado del Municipio, quien expresó que se vio afectado en unas dos (2) ocasiones en su turno por ausencias del señor Gutiérrez Lacayo,[82] y (iii) unas copias de unas entradas correspondientes a un libro en el que se anotaban las incidencias de los turnos de los guardias de seguridad.[83]

Establecido lo anterior, reseñamos que, según se desprende de los autos, durante su testimonio oral, ofrecido en la vista en su

---

[79] *Orta v. Padilla,* supra, a la pág. 243.
[80] *Morales Narváez v. Gobernador,* supra, a la pág. 768.
[81] SUMAC TA, a la Entrada Núm. 5, Anejo 2, pág. 155.
[82] *Íd.,* Anejo 2, pág. 157.
[83] *Íd.,* a la pág. 70. Véase, además, SUMAC TA, a la Entrada Núm. 5, Anejo 6, págs. 3-6.

fondo, el señor Gutiérrez Lacayo indicó que trabajaba en el Municipio de Maunabo desde septiembre de 1991.[84] Explicó que, en ese entonces, firmó un primer contrato por un año, empero, cuando culminó ese año, nunca volvió a firmar otro contrato, como tampoco recibió una notificación del municipio de que ese contrato fue renovado.[85] Así, pues, según alegó, se reportó a trabajar todos los días, desde que firmó el contrato en el 1991 hasta que le entregaron la carta de despido el 1 de marzo de 2004.[86]

Por otra parte, durante su testimonio, el recurrido acentuó que, para finales de 2003, lo obligaron a irse vacaciones, puesto a que tenía días acumulados, por lo que debía agotar al menos treinta (30) días.[87] Sin embargo, cuando le tocaba regresar se enfermó, por lo cual estuvo ausente dos (2) días y regresó al tercero.[88] Según manifestó, de ahí, a través de una carta con fecha de 11 de febrero de 2004, el Municipio lo citó para una reunión a celebrarse al cabo de unas semanas, empero, al llegar la fecha señalada para esta, fue transferida para una fecha posterior, lo cual volvió ocurrió en unas tres (3) ocasiones.[89] Finalmente, acorde al testimonio del recurrido, en la tercera ocasión en la cual lo citaron para la presunta reunión, fue que le entregaron la carta por medio de la cual fue cesanteado de su puesto como guardia de seguridad.[90]

Por lo antes expuesto, lo cual, sin ánimos de ser reiterativos, acentuamos que no fue refutado por la prueba presentada por el Municipio, se desprende, sin lugar a duda, que, a la fecha del 1 de marzo de 2004, el nombramiento transitorio del señor Gutiérrez Lacayo aún estaba en vigor. Esto, puesto a que, cuando recibió las dos (2) misivas a las cuales se hace referencia en el caso y las cuales

---

[84] SUMAC TA, a la Entrada Núm. 5, Anejo 2, pág. 158.
[85] *Íd.*
[86] *Íd.*
[87] *Íd.*
[88] *Íd.*
[89] *Íd.*
[90] *Íd.*

se presentaron como parte de la prueba documental – la primera en el mes de febrero y la segunda en el mes de marzo de 2004 –, al igual que todos los años, no había recibido ninguna notificación o indicación que le hiciera entender que, a esa fecha, su nombramiento había vencido. Lo anterior, unido al hecho que, desde finales del mes de diciembre de 2023, **hasta finales del mes de enero de 2004**, el señor Gutiérrez Lacayo se encontraba agotando una licencia de vacaciones, lo cual no hubiese sido posible si este, para ese entonces, no hubiese sido empleado del Municipio, según intenta alegar la parte apelante.

Siendo así, colegimos el modo operativo del Municipio por el espacio de doce (12) años le generó una expectativa al señor Gutiérrez Lacayo que su empleo continuaría, al menos, y según hemos reseñado, hasta culminarse el año en curso en ese entonces. Entiéndase, hasta la fecha del **31 de diciembre de 2004**. En consecuencia, no es correcto lo aseverado por el Alcalde del Municipio de Maunabo, en la carta de despido remitida al recurrido, de que su contrato venció el **31 de diciembre de 2003**, ya que nada en los autos ante nuestra consideración apoya esta teoría. En otras palabras, no es posible estar agotando una licencia en el mes de enero de 2004, imputar como una falla el no haber regresado al trabajo luego de agotar la susodicha licencia y luego decir que el contrato había vencido el 31 de diciembre de 2003. No hay espacio para poder llegar a dicho análisis a base de la totalidad del expediente. Por tanto, es correcto decir que, el recurrido fue empleado del Municipio de Maunabo ininterrumpidamente desde septiembre de 1991 hasta que fue despedido mediante la misiva del 1 de marzo de 2004.

En consideración a todo lo antes expuesto, y en vista de que, a la fecha del 1 de marzo de 2004, el nombramiento transitorio del señor Gutiérrez Lacayo continuaba en vigor, el Municipio estaba

obligado a cumplir con ciertos requerimientos para poder despedirlo, lo cual conforme se desprende de los autos, evidentemente no ocurrió.

Según la derogada Ley de Municipios Autónomos, la destitución del señor Gutiérrez Lacayo debía ser por justa causa, y luego de haberse realizado una previa formulación de cargos por escrito, así como una citación a una vista informal.[91] Nada de lo anterior aconteció.

Aunque la ausencia injustificada y sin autorización puede ser justa causa para la destitución, según la Ley de Municipios Autónomos, esta tenía que ser por cinco (5) días consecutivos.[92] De la prueba en autos no se desprende que alguna de las ausencias del señor Gutiérrez Lacayo hubiese sido por más de dos (2) días. Incluso, de su testimonio oral se desprende que, cuando este no regresó al culminar su licencia por vacaciones, por haberse enfermado, este estuvo ausente dos (2) días y regresó al tercer día.[93]

Por otra parte, precisa destacar que de ninguna de las dos (2) misivas que le fueron remitidas por el Municipio se desprende que se le hubiesen formulado los cargos "con una relación de los hechos que sostienen la acción disciplinaria y de las leyes, ordenanzas, reglas o normas que han sido violadas por el empleado", según requiere la ley aplicable.[94] En la carta del 11 de febrero de 2004, únicamente se le indicó al señor Gutiérrez Lacayo que se había "ausentado de su trabajo sin justificación alguna desde el 2 de febrero de 2004".[95] Mientras que, en la misiva del 1 de marzo de 2004, se le explicó:

> No existe duda alguna que usted no asistió a su trabajo los días 3 de mayo de 2002, 9 de mayo de 2002 y 19 de julio de 2002, al turno de las 11:00 p.m. obligando al guardia del turno anterior a realizar la labor que le correspondía a usted.

---

[91] Artículo 11.012 (a) y (b) de la Ley Núm. 81, *supra* (derogado).
[92] *Íd.*, Artículo 11.012 (d) (derogado).
[93] SUMAC TA, a la Entrada Núm. 5, Anejo 2, pág. 158.
[94] Artículo 11.012 (b) de la Ley Núm. 81, *supra* (derogado).
[95] SUMAC TA, a la Entrada Núm. 5, Anejo 6, pág. 7.

> **El pasado día 2 de febrero de 2004 se suponía que regresara a su trabajo después de agotar vacaciones** y no lo hizo porque estaba detenido en una institución penal, por desacato al Tribunal.
>
> Un examen de su expediente de trabajo nos revela una conducta reiterada de incumplimiento con sus obligaciones. [. . .].[96] **Énfasis suplido.**

Pese a que en ambas misivas está claro que la conducta reprobada por el Municipio eran una serie de ausencias por parte del recurrido, no se hizo referencia alguna a las leyes, ordenanzas, reglas o normas que habían sido violadas por el este, según requería la Ley de Municipios Autónomos.

Por último, aunque en la carta del 11 de febrero de 2004, se le citó a una reunión informal para discutir la situación de sus ausencias y en la cual este podría "presentar evidencia documental y testifical que considere necesaria para su caso, ya que ser[ía] la oportunidad que [este] tendr[ía] para la discusión plena del asunto",[97] y que, durante el testimonio de la señora Pedroza Camacho, esta indicó que la vista informal se llevó a cabo,[98] no hay ninguna constancia en los autos ante nuestra consideración de que esta vista en efecto se celebró. De manera que, ninguno de los requerimientos exigidos por el ordenamiento para cesantear a un empleado transitorio, que aún tenía su nombramiento vigente, se cumplieron por parte del Municipio de Maunabo, en cuanto al señor Gutiérrez Lacayo.

En vista de todo lo antes expuesto, nos es forzoso concluir que el *segundo* y *tercer* error esgrimido por el Municipio *no se cometieron.* Más aun cuando esta parte no fue capaz de demostrar que existe otra prueba en el expediente que impide concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[99] Según

---

[96] SUMAC TA, a la Entrada Núm. 5, Anejo 6, a las págs. 1-2.
[97] *Íd.*, a la pág. 7.
[98] *Íd.*, a la Entrada Núm. 5, Anejo 2, pág. 155.
[99] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.

nuestro ordenamiento jurídico vigente, cuando esta Curia tiene ante sí un recurso de revisión judicial, si la parte recurrente no demuestra lo anterior, estaremos impedidos de sustituir el criterio de la agencia.[100] En consecuencia, amerita que confirmemos la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[100] *Otero v. Toyota,* supra, a la pág. 728.